**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Samuel Leroy BOSTIAN,**
**Defendant–Appellant.**

**No. 94–5658.**

United States Court of Appeals,
Fourth Circuit.

Argued May 3, 1995.

Decided July 7, 1995.

---

**ARGUED:** John Stuart Bruce, Deputy Federal Public Defender, Greensboro, NC, for appellant. Harry L. Hobgood, Asst. U.S. Atty., Greensboro, NC, for appellee. **ON BRIEF:** William E. Martin, Federal Public Defender, Greensboro, NC, for appellant. Walter C. Holton, Jr., U.S. Atty., Greensboro, NC, for appellee.

Before HAMILTON and LUTTIG, Circuit Judges, and LIVELY, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

Affirmed by published opinion. Senior Judge LIVELY wrote the opinion, in which Judge HAMILTON and Judge LUTTIG joined.

## OPINION

LIVELY, Senior Circuit Judge:

The defendant, Samuel Bostian, appeals from his jury conviction for corruptly obstructing or impeding the administration of the Internal Revenue Code in violation of 26 U.S.C. § 7212(a) (1988). On appeal, he argues that the acts charged in the indictment and shown by the evidence did not constitute violations of section 7212(a). He also contends that the district court erroneously denied his motion for a new trial based on several trial rulings. Upon consideration of the briefs, oral arguments of counsel, and the record on appeal, we affirm the judgment of the district court.

## I.

### A.

Samuel Bostian is a resident of North Carolina. In 1978, Bostian deeded approximately 240 acres of land to a trust called "Ted Works, a division of the Ellen Bell Foundation" (the trust). Bostian's wife and daughter served as trustees; in 1987, Robert LaBine, a Michigan resident, also became a trustee at Bostian's request.

In 1984, after conducting audits for 1977–83, the Internal Revenue Service (IRS) determined that Bostian had a large personal income tax deficiency. Over the next 9 years, the IRS took steps to recover these taxes. In 1984 and 1985, it sent Bostian demand letters and lodged tax liens against his real estate. In December 1989, the IRS filed a civil action against Bostian to collect the taxes owed and foreclose on the tax liens. Bostian handled the matter pro se, maintaining that he had no taxable income for 1977–83. In August 1990, the government served a request for admissions on Bostian, requesting him to admit that the trust's property was actually owned by him. Bostian did not respond to the request.

In November 1992, the district court, Chief Judge Frank W. Bullock, Jr. presiding, granted summary judgment in favor of the government. The trust, the court held, was Bostian's alter ego. The court concluded that Bostian owed $439,306 in taxes, plus interest, and that the government held a valid tax lien on the 240 acres titled in the trust's name. In February 1993, Judge Bullock ordered the United States Marshals Service to "take all action necessary to preserve the properties" and sell them at public auction, free and clear of all encumbrances. Bostian did not appeal this order within 60 days, as required by Federal Rule of Appellate Procedure 4(a)(1).

In September 1993, several deputy marshals served a copy of the district court order on Bostian at his place of business. The marshals told Bostian not to go onto the seized property, interfere with any signs posted on it, or attempt to disrupt its sale. In response, Bostian told the marshals, "you know, you people are my enemy." The marshals then hired an auction company to advertise and conduct the sale.

Bostian contacted LaBine, who met with a Michigan attorney, Casper Connolly. Connolly provided LaBine with legal advice, and LaBine conveyed this advice to Bostian.

On November 3, 1993, three days before the auction, Bostian recorded a lis pendens against the property, signed by his wife as trustee of the Ellen Bell Foundation. The lis pendens stated that the Ellen Bell Foundation was the true owner of the real estate, including a right of way, and threatened a slander of title action against anyone recording a false claim of interest.

The day before the auction, Bostian's daughter and a male companion attended an open house viewing of the property and began handing out copies of the lis pendens to prospective buyers. They left when asked to do so by a deputy marshal. A little later, the marshals saw Bostian posting a large photocopy of the lis pendens on top of one of the signs advertising the auction. The photo-

copy sat on top of the auction sign without obscuring or damaging the sign itself. The sign was located at the corner of the road past the property and a driveway leading to the property. Several deputy marshals arrested Bostian at that time. They found three similar signs in Bostian's truck. On November 6, the property sold at auction for $355,000.

### B.

Bostian was indicted and charged with violating 26 U.S.C. § 7212(a) (1988) by corruptly obstructing and impeding and endeavoring to obstruct and impede the administration of the Internal Revenue Code by interfering with the auction. The relevant portion of section 7212(a) reads as follows:

> Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both.

At the beginning of Bostian's criminal trial, the district court, Judge William L. Osteen, Sr. presiding, granted the government's motion in limine to bar any evidence concerning whether Bostian actually owned the property or the actual amount of Bostian's tax liability, matters that had been determined in the civil action. The jury found Bostian guilty, and the court sentenced him to 5 years' probation and imposed a $3,000 fine and $50 special assessment. Motions for acquittal and for a new trial were denied.

### II.

Except for disputing the location of the property line and right-of-way road, Bostian does not deny engaging in the acts relied upon by the government. Rather, he maintains that none of his actions constituted a violation of section 7212(a). Thus, he raises a question of statutory construction, disagreeing with the government's view of the scope of the language employed in describing the offense. We apply a de novo standard of review.

### A.

Section 7212(a) is written in the disjunctive throughout. A defendant violates it by *either* 1) "corruptly" *or* "by force *or* threats of force" endeavoring to "intimidate *or* impede"; *or* by 2) "in any other way corruptly *or* by force *or* threats of force" impeding administration of the tax laws. This second clause is known as the "omnibus clause." See *United States v. Popkin,* 943 F.2d 1535, 1538 (11th Cir.1991), *cert. denied,* 503 U.S. 1004, 112 S.Ct. 1760, 118 L.Ed.2d 423 (1992). Resolution of the case hinges on the meaning of the key words "corruptly" and "impede," and whether Bostian's actions fall within these defined terms.

Bostian contends that the filing and dissemination of the lis pendens did not constitute a "corrupt" obstruction and impediment of Title 26. Instead, these actions only created additional work for the government. North Carolina law, he explains, contains a provision for cancellation of a notice of lis pendens. If the lis pendens had been as frivolous as the government claimed, the government could have cancelled the lis pendens with little difficulty. He also asserts that he did not act corruptly, since he did not act, as the jury instructions required, "with the intent to secure an unlawful benefit either to [himself] or for another." Frightening away auction bidders would have been to his detriment, he claims. In addition, Bostian argues that his remark to the marshals that "you people are my enemy" did not "impede" the IRS. A show of animosity amounts to neither an impediment nor an act or threat of force. Cases cited by the government, he claims, are inapposite. We disagree.

### B.

This court quite recently conducted a careful examination of section 7212(a) in *United States v. Mitchell,* 985 F.2d 1275 (4th Cir. 1993). *Mitchell* involved an employee of the Fish and Wildlife Service of the Department of the Interior who set up a tax exempt organization called the American Ecological Union, Inc. Although his IRS application for tax exempt status stated that the organization had been formed to promote and facilitate ecological research, the government charged that he used it to solicit payments from big game hunters, and then arranged hunting trips in China and Pakistan and lobbied to have certain endangered species delisted. The government also charged that the defendant went on some of these trips himself and induced the hunters to claim their "donations" to his organization as tax deductions. *Id.* at 1276–77.

Mitchell was charged with violation of § 7212(a). He argued that although his activities might have been criminal, they did not violate § 7212(a). The district court agreed, and read the statute narrowly to require the "kind of corruption that goes to a particular officer or employee." This court reversed, explaining that the district court's definition of "corrupt" was too narrow; the term "corrupt endeavor" covers more than just bribery, solicitation or subornation. The "omnibus clause" reaches more than these more narrowly defined methods of obstructing the tax laws.

In reaching this conclusion, the *Mitchell* court reviewed case law from other circuits. In *United States v. Reeves,* 752 F.2d 995 (5th Cir.), *cert. denied,* 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985) (*Reeves I*), the defendant Reeves filed a "common law lien" against the residence of an IRS agent who was investigating him. The defendant argued that he had not acted "corruptly." The court of appeals rejected a definition of "corrupt" as meaning "with improper motive or bad or evil purpose." Instead, the court of appeals stated that both the language of § 7212(a) (use of the word "endeavor") and its legislative history support "interpreting its prohibition against 'corruptly' endeavoring to impede or obstruct Title 26 as forbid-

ding those acts done with the intent to secure an unlawful benefit either for oneself or for another." *Id.* at 998–1001.

This definition did not help Mitchell. The *Reeves I* court had wanted to exclude behavior by taxpayers that, although an impediment to tax administration, was not engaged in with any intent to gain an improper benefit. Fraud and misrepresentation such as that practiced by Mitchell, however, clearly fell within the bounds of the statute, because it was done with the intent to secure an unlawful benefit either for oneself or for another. " 'Corruptly' ... includes bribery, but is more comprehensive, because an act may be corruptly done though the advantage to be derived from it be not offered by another." *Mitchell,* 985 F.2d at 1278 (quoting *Reeves I,* 752 F.2d at 998).

Following remand by the Fifth Circuit Reeves was again convicted and once more appealed. *United States v. Reeves,* 782 F.2d 1323 (5th Cir.), *cert. denied,* 479 U.S. 837, 107 S.Ct. 136, 93 L.Ed.2d 79 (1986) (*Reeves II*). In its second opinion the district court found Reeves had acted with the intent to secure benefits for himself "insofar as the filing of the lien on [the agent's] property would divert his time and attention from pursuing tax investigations against Reeves and others." The court of appeals agreed, and affirmed. *Id.* at 1326.

The *Mitchell* court also discussed *United States v. Poindexter,* 951 F.2d 369 (D.C. Cir. 1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 656, 121 L.Ed.2d 583 (1992). In *Poindexter,* the court held that the term "corruptly," as used in 18 U.S.C. § 1505, the general federal obstruction of justice statute, was unconstitutionally vague. To pass constitutional muster, "corruptly" would have to mean some form of subornation. *Id.* at 379. In *Mitchell* we declined to follow this narrow definition. Judge Murnaghan pointed to the "well-established rule" in the Fourth Circuit "that the omnibus clauses of federal obstruction statutes should be broadly construed." 985 F.2d at 1278 (quoting an earlier decision, *United States v. Mitchell,* 877 F.2d 294, 298 (4th Cir.1989)). Other courts have adopted a broad interpretation of the omnibus clause. See, *e.g., United States v. Martin,* 747 F.2d

1404, 1409 (11th Cir.1984) ("Congress was not required to list in the legislative history [of § 7212(a) ] every conceivable corrupt endeavor to avoid waiving the statute's application to one type of corrupt endeavor.... Congress may use a term that conveys the type of conduct regulated rather than enumerate all the specific instances within the legislation.").

### C.

■ Bostian's conduct came within the proscription of section 7212(a). He acted corruptly by filing the lis pendens and attempting to interfere with the sale by affixing an enlarged copy of that document to a sign advertising the auction. By these actions he did intend to "secure an unlawful benefit" to himself—prevention of the sale of the property. His argument that he would suffer from, rather than benefit from actions that reduced the sale price misses the point. His purpose was not to obtain the highest price from the sale; rather, it was to prevent the sale altogether by creating a cloud on the title with his spurious claim that the trust owned the property.

Bostian also contends his actions were not unlawful. However, as the *Mitchell* court observed, actions need not be illegal to violate § 7212(a). *Mitchell,* 985 F.2d at 1278. Even assuming that his posting of the enlarged copy of the lis pendens and the distribution of copies of the document violated no law, these actions clearly were intended to impede the government's efforts to sell the seized property at auction. Bostian's argument that the sale took place, and thus his actions did not impede the government's efforts to sell the seized property at auction, is meritless. The court in *United States v. Rosnow,* 977 F.2d 399 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1596, 123 L.Ed.2d 159 (1993), explained that only intent to impede, not successful impediment, is necessary for § 7212(a) to be violated. *Id.* at 410 (citing *United States v. Williams,* 644 F.2d 696, 699 n.14 (8th Cir.), *cert. denied,* 454 U.S. 841, 102 S.Ct. 150, 70 L.Ed.2d 124 (1981)).

There was no failure of proof in this case. The evidence of Bostian's activities was suffi-cient to support the jury's finding beyond a reasonable doubt that the defendant violated section 7212(a).

### III.

The defendant presents four arguments that he is entitled to a new trial. First, he asserts the lower court erroneously granted the government's in limine motion to apply collateral estoppel to prevent him from attempting to show that the trust owned the seized property. Second, he contends the district court should have allowed him to present exculpatory evidence that would have tended to negate intent, which is a requisite element of a § 7212(a) offense. Third, Bostian claims the court improperly excluded his evidence that he did not enter the property when he posted his sign, but admitted the government's evidence that he did. Finally, he argues that the court's definitions of "obstruct" and "impede" in the jury instructions were too broad. Only one of these arguments requires extended discussion.

### A.

■ As noted earlier, the district court granted the government's motion to bar any evidence contesting Bostian's ownership of the real property or the amount of the tax deficiency. These matters had been conclusively determined in the civil tax case before Judge Bullock, who made a finding on the tax owed and held that Bostian was the true owner of the property—that the trust was in fact an alter ego of Bostian. Bostian did not appeal.

As he did in the district court, Bostian argues that it was error to hold he was collaterally estopped from contesting these determinations in the criminal proceedings. He asserts that because intent is an element of the criminal offense he is charged with committing, he should have been permitted to negate criminal intent by showing that he had always maintained that the trust, not he, was the true owner of the property. The district court's ruling, he contends, deprived him of the opportunity to present evidence that his actions, especially filing the lis pendens, were "done in good faith, or at least

[were] not done 'corruptly.'" (Def. Brief at 25).

■ As a general rule, evidence of a determination made in a civil action where the party with the burden of persuasion must establish facts only by a preponderance of the evidence is not admissible to prove an element of a criminal prosecution where the government must establish elements of the charged offense beyond a reasonable doubt. See Charles A. Wright et al., 18 FEDERAL PRACTICE AND PROCEDURE § 4422 (1981). A matter established in an action requiring a lower burden of proof is not conclusive if the same issue is raised in an action requiring a higher burden.

The problem with the defendant's argument is that ownership of the land was not an issue in the criminal trial or an element of the charged offense. A person violates section 7212(a) by obstructing or impeding, or attempting to obstruct or impede, implementation of the tax code. A violation occurs regardless of whether the impeding or obstructing party owns the property against which the government is attempting to collect. The district court did not prohibit Bostian from testifying about his intent in resisting the sale of the property; the ruling merely barred him from relitigating ownership of the property—a matter that was immaterial in the criminal trial. It was not error to apply issue preclusion to prevent relitigation of a question previously decided that was not material to the issue of innocence or guilt.

### B.

■ The defendant's remaining arguments have no merit. Rulings related to admission and exclusion of evidence are addressed to the sound discretion of the trial judge and will not be reversed absent an abuse of that discretion. *United States v. Russell,* 971 F.2d 1098, 1104 (4th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1013, 122 L.Ed.2d 161 (1993). The same standard of review applies to a trial court's decision "to give (or not to give) a jury instruction and the content of an instruction." *Id.* at 1107. Our examination of the record reveals no such abuse.

■ The district court properly excluded evidence that Bostian acted in good faith on the advice of counsel. The court correctly found there was no indication that an attorney had been hired to give Bostian himself legal advice, that Bostian actually received such advice, or that he relied on this advice. (JA at 360–63) It is clear that LaBine contacted Connolly, purportedly on behalf of the trust, and that LaBine conveyed any advice to Bostian. This does not satisfy the elements of a reliance defense.

■ The district court also correctly excluded evidence tending to show that Bostian was not physically on the seized property when he posted the enlarged lis pendens notice. Section 7212(a) does not require that a person attempting to obstruct or impede the tax code do so on the subject property. Evidence concerning the precise location where his acts occurred is not relevant. The government also did not charge Bostian with trespass, a charge that would have made this evidence relevant. Thus, exclusion of this evidence was proper and not an abuse of discretion.

■ Finally, we have examined the jury instructions and reject Bostian's claim that their definition of "obstruct or impede" is too broad. This court reviews jury instructions in their entirety and as part of the whole trial. *United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975). In a criminal case, we determine, on that basis, "whether the court adequately instructed the jury on the elements of the offense and the accused's defenses." *United States v. Fowler,* 932 F.2d 306, 317 (4th Cir.1991). The instructions in this case were clearly adequate. There was no abuse of discretion.

***AFFIRMED.***