UNITED STATES of America,

v.

George T. TOLIVER, Defendant.

Criminal No. 97–6–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

July 9, 1997.

**1032**

Rick A. Mountcastle, U.S. Attorney's Office, Abingdon, VA, Susan Vrahoretis, U.S. Dept. of Justice, Tax Div., Washington, DC, for Plaintiff.

Guy M. Harbert, III, Gentry, Locke, Rakes & Moore, Roanoke, VA, for Defendant.

## OPINION AND ORDER

JONES, District Judge.

In this criminal case, the ·defendant, charged with one count of endeavoring to obstruct or impede the administration of the tax code and two counts of willfully making and subscribing a false tax return, has filed several pretrial motions. The defendant has moved for a dismissal of the obstruction count on several different grounds and for the dismissal of the entire indictment because each count is duplicitous. I deny the defendant's motions. I will also deny the defendant's request for a bill of particulars, and his request for the suppression of certain documents. I will reserve ruling on his motion to have language struck from the indict-

ment until after the presentation of evidence at trial.[1]

### I. Background.

This case arises out of the defendant's alleged failure to report to the Internal Revenue Service ("IRS") taxable income obtained through his employer's travel reimbursement plan and from his efforts to conceal this income. Between 1989 and 1994, the defendant, George T. Toliver ("Toliver"), was employed by the National Basketball Association ("NBA") as a referee. Pursuant to the terms of each collective bargaining agreement ("CBA") in effect between the NBA and the National Basketball Referees Association ("Union"), referees were furnished with first-class tickets or the cash value of these fares for flights longer than two hours. Under the CBAs, the referees had the right to downgrade these fares to lower priced tickets and to retain the difference. Under the internal revenue code, the retained amounts constituted taxable income.

Between 1989 and 1994, the IRS had different reporting and withholding requirements for income generated by an employer's reimbursement plan. Prior to 1990, the IRS only required an employer to report such income. In the case of the defendant, for the 1990 tax year, the NBA issued a 1099 form reporting the entire amount of the first-class tickets provided to him.

The government alleges that during the 1990 tax year Toliver downgraded a substantial number of tickets, retained the income generated by these downgrades, and then informed his tax return preparer that he had used all of the first-class tickets for actual travel, inducing his preparer to offset the income reported on the 1099 form with a corresponding business expenses deduction.

---

**1.** The defendant has also moved for reconsideration of my June 11, 1997, orders requiring the Internal Revenue Service to release previously undisclosed documents to the court and to permit the government to review these materials to ensure compliance with *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). At oral argument, the government indicated its willingness to such reconsideration on the condi-

tion that the defendant waive any later objection or appeal based on an alleged failure to comply with *Brady* with regard to these materials. The defendant agreed in principle and I will defer action on the motion for reconsideration until advised by either of the parties. Similarly, the parties expressed agreement on the government's motion for discovery and I will also defer ruling on that motion.

Beginning about March, 1991, the NBA, in reaction to changes in IRS regulations and after extensive negotiations with the Union, restructured its referee travel plan. The new IRS regulation, which necessitated this change, required the NBA to report additional income generated by a travel program and to also withhold and pay taxes on this income. The NBA and the Union agreed to a program which provided referees with three alternatives.[2]

Under "option 1," the NBA itself purchased all tickets.[3] If a referee exercised his right to downgrade, the NBA would receive a refund which would be passed on to the referee after the proper taxes had been withheld and paid. The amount of this additional income as well as the withheld taxes would be included on the referee's W–2 form.

Under "option 2," the NBA would provide the referee with the cash value of a first-class ticket less the withheld tax and the referee would then be free to purchase any ticket he wished and to retain the difference. The amount reported and withheld on the W–2, however, was based not on the actual additional income generated but on the full value of the first-class fare. The referee would only receive a tax refund, the amount varying with the extent of the business expenses substantiated to the IRS, after he had filed his tax returns for that tax year.[4]

Toliver selected this option for his travel between February 1991 and September 1991. During this time period, the government alleges that Toliver received the full value of first-class tickets minus the withheld taxes, and that rather than purchasing first-class tickets he purchased lower priced tickets and retained the difference. Subsequently, by implying that he had used the full value for actual travel, Toliver concealed this income from the person preparing his 1991 tax returns who then deducted their full value as a business expense deduction.

About October 1991 Toliver switched to "option 3." This option allowed a referee to purchase his own tickets and then submit travel receipts documenting the cost of his actual travel. If a referee entitled to a first-class airfare submitted receipts for a lower priced ticket, the NBA would reimburse the referee for the actual ticket purchased and refund the difference between the fares after reporting the income generated and withholding and paying the proper taxes.[5]

The government alleges that between 1989 and September 1994, Toliver obtained and submitted false travel receipts, inflating his actual travel costs.[6] On the basis of these receipts, the NBA reimbursed Toliver for these amounts, and, assuming that these amounts reflected only actual business expenses, did not withhold or pay any taxes.

2. The Union was represented in the CBA negotiations, during which the travel program emerged as an issue, by attorney Fred Slaughter. Slaughter's representation was limited to the negotiations and did not extend to representation of individual union members regarding their compliance with the NBA's policies or with the tax code.

3. Referees purchased the actual tickets by using an NBA credit card.

4. The referees considered "option 2" problematic and disadvantageous. Under this option, the NBA immediately withheld taxes based on the full value of the first-class fare. Although a referee could later obtain a refund by claiming a business expense deduction, often the IRS's substantiation requirements could not be satisfied.

5. From the referees' standpoint, "option 3" minimized their initial withholding burden allowing

them to receive the immediate benefit of any refunds which they might later obtain. If a referee purchased a first-class fare and substantiated this purchase to the NBA, no tax would be withheld. If the referee purchased a lower priced fare, he would not be taxed on the reimbursement amount but only on the additional income generated, rather than the entire value of the higher-priced fare, as required under "option 2."

6. Around October 1992, the NBA and the Union entered into a new CBA that modified the travel plan. Subsequently, the NBA advanced referees their estimated travel costs and then required them to submit substantiating documents. If a difference existed, the NBA would then withhold and pay the proper amount of tax. From about October 1992 until September 1994, the NBA paid Toliver his projected monthly air travel expenses. The government alleges that Toliver continued his practice of inflating his actual travel costs through the submission of false receipts.

On February 12, 1997, the grand jury indicted Toliver for one count of corruptly endeavoring to obstruct and impede the due administration of the internal revenue code in violation of: 26 U.S.C.A. § 7212(a) (West 1989 & Supp.1997) (count 1) and two counts of willfully making and subscribing, under penalties of perjury, false income tax returns for the 1992 and 1993 tax years in violation of 26 U.S.C.A. § 7206(1) (West 1989 & Supp. 1997) (counts 2 and 3).

The defendant moves for the dismissal of count 1 on the grounds that: (1) the charged conduct did not violate section 7212(a); (2) the statute is unconstitutionally vague as applied; (3) count 1 is multiplicitous of counts 2 and 3; and (3) his prosecution is barred by the applicable statute of limitations. The defendant has also moved for the dismissal of the indictment because each count is duplicitous.

The defendant also seeks to suppress documents allegedly obtained in violation of his attorney-client privilege and to require the government to file a bill of particulars and to strike certain language from the indictment.

Briefs and oral argument have been presented and the defendant's motions are ready for decision.

## II. Failure to State Offense.

Toliver contends that the government has failed to state an offense chargeable under the obstruction statute, 26 U.S.C.A. § 7212(a) (West 1989 & Supp.1997). He asserts that the indictment only states two allegations of conduct which could form the basis of a violation of section 7212(a): (1) inducing the NBA to file false W–2 forms; and (2) subscribing false income tax returns. Toliver contends that the NBA was obligated, independent of his conduct, to report and withhold taxes on the full value of all first-class tickets or equivalent value provided to him.[7]

According to Toliver this conduct, all legal and occurring prior to the filing of his tax returns, cannot be considered as part of the charged obstruction offense, and his prosecution pursuant to section 7212(a) rests solely on his subscribing the false tax returns.[8] Such conduct, standing alone, is not within the scope of the obstruction statute and would amount to an unprecedented and improper extension of the statute's reach. Toliver further contends that the legislative history of section 7212(a) and a Department of Justice policy statement[9] support his construction of the statute.

The government argues that section 7212(a) should be broadly construed and applies to conduct undertaken with an intent to secure an unlawful benefit. According to the government, Toliver's course of conduct amounts to a scheme to obtain an unlawful benefit, and, as such, is within the scope of section 7212(a). The government also contests Toliver's assertion that the NBA had an independent obligation to report the full value of the first-class fares.

I find that section 7212(a), regardless of the defendant's role in the NBA's actions, applies to the conduct at issue.[10] A defen-

7. Toliver asserts that under the relevant regulations the NBA's plan was a "nonaccountable plan" under which an employer is obligated to report al the reimbursed amounts and to withhold and pay taxes. Treas. Reg. § 1.62–2(c)(5) (1997). Toliver's position finds support in *United States v. Mathis*, No. CR–1–97–15 (S.D.Ohio Jun. 2, 1997). In *Mathis*, a factually similar case, the district court classified the NBA's plan as "nonaccountable" and found that the NBA was obligated to report and withhold taxes on the entire value of the tickets. *Id.*

8. Toliver asserts that appellate decisions interpreting the scope of section 7212(a) are limited to four categories of cases: (1) actions directly targeted at impeding or harassing an IRS employee; (2) fraudulent activity in connection with an on-going IRS audit, collection or investigative proceeding; (3) actions to set in motion IRS proceedings to give an advantage to a third party; and (4) massive schemes created with an intent and purpose of disrupting IRS activities. He contends that his conduct is not analogous to any prior section 7212(a) action.

9. Section 7212(a) "should not be utilized when other more specific charges are available and adequately reflect the gravamen of the offense." *Department of Justice, Tax Division, Directive No. 77, Section 7212(a) Policy Statement* (July 7, 1989).

10. Although the parties have also argued the general sufficiency of count 1 of the indictment, I believe that this issue is more properly resolved in the context of my assessment of the defendant's request for a bill of particulars.

dant violates section 7212(a) by either: (1) "corruptly or by force or threats of force" endeavoring to intimidate or impede a government official; or (2) "in any other way corruptly or by force or threats of force" impeding or obstructing or endeavoring to obstruct or impede the administration of the tax laws. 26 U.S.C.A. § 7212(a) (West 1989 & Supp.1997). The government's prosecution of Toliver occurs pursuant to the second clause, known as the "omnibus clause."

The Fourth Circuit has interpreted the "omnibus clause" broadly, indicating its applicability to multi-faceted schemes undertaken with an intent to gain an improper benefit or advantage. *United States v. Mitchell*, 985 F.2d 1275, 1279 (4th Cir.1993). In analyzing an analogous obstruction statute, the Fourth Circuit approvingly noted that "[t]he obstruction of justice statute was drafted with an eye to 'the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined.'" *United States v. Mitchell*, 877 F.2d 294, 299 (4th Cir.1989) (quoting *United States v. Griffin*, 589 F.2d 200, 206–07 (5th Cir.1979)); *see Mitchell*, 985 F.2d at 1278 (relying on this authority in the context of an assessment of section 7212(a)).

■ I do not find the fact that Toliver's conduct was not illegal per se or that it occurred prior to the filing of false returns dispositive of the issue of section 7212(a)'s applicability. To form the basis of an ob-

struction charge, conduct need not be either illegal or successful. *United States v. Bostian*, 59 F.3d 474, 479 (4th Cir.1995); *but see United States v. Kassouf*, 948 F.Supp. 36, 38 (N.D.Ohio 1996) (finding conduct occurring prior to filing insufficient for a section 7212(a) violation).[11]

In adopting a broad construction of section 7212(a), the Fourth Circuit relied on *United States v. Popkin*, 943 F.2d 1535 (11th Cir. 1991). *Mitchell*, 985 F.2d at 1278–79. *Popkin* involved a defendant who assisted a taxpayer's concealment of taxable repatriated income through the formation of a corporation. *Popkin*, 943 F.2d at 1536. The defendant argued that the formation of the corporation was entirely legal and that section 7212(a) did not specifically target money laundering. *Id.* at 1538. The court rejected this argument, finding the fact that the corporation was formed for the purpose of disguising the character of the repatriated income to be determinative. *Id.* at 1540.

■ I find this reasoning persuasive with regard to the defendant's conduct. It is evident that Toliver's submission of false receipts was intended to conceal the income and to secure an unlawful benefit. The defendant's alleged actions, encompassing the procurement of false receipts, the submission of those receipts to the NBA and the ultimate filing of false returns, constitutes the type of scheme to which section 7212(a) applies.[12]

---

11. Although I am inclined to agree with the *Mathis* court's view of the NBA plan, an alternative argument exists. Under the relevant regulations, an employee can receive reimbursements pursuant to an "accountable plan" and still retain amounts in excess of his actual business expenses. In such a situation, if an employee "fails to return ... any amount in excess of the amount of the expenses substantiated," only the substantiated amounts are treated as paid under the accountable plan and not subject to withholding. Treas. Reg. § 1.62–2(c)(2)(ii)(997). Arguably, options 1 and 3 were accountable plans, eliminating any unnecessary withholding, and to the extent that a referee received additional income it would be taxed in accordance with this regulation. Under this reasoning, Toliver's actions induced the NBA to impede the IRS's collection of taxes. Resolution of this issue, however, is not necessary to my assessment of section 7212(a)'s applicability.

12. Toliver's reliance on the section's legislative history does not impact my analysis. *Mitchell*, 985 F.2d at 1279 ("We do not find the [legislative] history particularly enlightening or dispositive of the precise scope of the omnibus provision."); *see also United States v. Martin*, 747 F.2d 1404, 1409 (11th Cir.1984) ("Congress was not required to list in the legislative history every conceivable corrupt endeavor to avoid waiving the statute's application to one type of corrupt endeavor."). Nor I am influenced by his citation of a Justice Department policy statement. *Crandon v. United States*, 494 U.S. 152, 177, 110 S.Ct. 997, 1011, 108 L.Ed.2d 132 (1990) (Scalia, J., concurring) (finding that because criminal statutes are "not administered by any agency but by the courts" the "interpretation of those charged with prosecuting criminal statutes is not entitled to deference").

### III. Vagueness.

■ Toliver also moves for the dismissal of count 1 on the ground that section 7212(a) is unconstitutionally vague as applied to his conduct.[13] He contends that prior case law, as well as the language and legislative history of section 7212(a), fail to provide adequate notice that his conduct would violate section 7212(a). Toliver argues that the availability of a statute more precisely tailored to punish such conduct, 26 U.S.C.A. § 7206(1) (West 1989 & Supp.1997), supports his contention that section 7212(a) is vague as applied. The government asserts that existing precedent provides ample notice that a course of conduct similar to that undertaken by the defendant would result in prosecution under section 7212(a).

■ I find that section 7212(a) is not unconstitutionally vague as applied to the defendant. A challenge for vagueness will fail if "reasonable persons" would have known from the language of the statute that "their conduct is at risk." *Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 1857, 100 L.Ed.2d 372 (1988). A statute can be void for vagueness not only on its face, but as applied, as a result of "unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie v. City of Columbia,* 378 U.S. 347, 352, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964). "Whether a court is analyzing a statute as void for vagueness on its face or as applied, the essence of the doctrine is that a potential defendant must have some notice or 'fair warning' that the conduct contemplated is forbidden by the criminal law." *United States v. Protex Industries, Inc.,* 874 F.2d 740, 743 (10th Cir. 1989).

Toliver does not contend, as he may not, that the language of section 7212(a), namely the term "corruptly" is unconstitutionally vague. The Fourth Circuit has rejected precedent finding this term vague, instead holding that section 7212(a)'s "corruptly" language clearly prohibits conduct undertaken with an intent to secure an unlawful benefit.

*Bostian,* 59 F.3d at 478 (noting prior rejection of reasoning adopted in *United States v. Poindexter,* 951 F.2d 369 (D.C.Cir.1991)).

Instead, Toliver asserts that existing case law would fail to warn him that his particular conduct would violate section 7212(a) and that the more precise false filing statute exists to sanction his actions. An underlying premise of his argument is that the conduct at issue is limited to merely filing false tax returns. I disagree with this conclusion. Toliver's actions include his exchanging of first-class fares for less expensive tickets, his procurement of false travel receipts, his submission of those receipts to the NBA, and his provision of false information to his own tax preparer. This is not simply a case of filing false returns, but involves an extensive scheme to conceal taxable income and to obstruct the IRS's detection of his actions.

It is clear that this conduct was undertaken to secure an unlawful benefit, namely avoiding the payment of taxes and establishing a paper trail to conceal taxable income. *See Bostian,* 59 F.3d at 474. I find that this conduct is within the core meaning of section 7212(a) and that Toliver had adequate notice that such actions were prohibited. *See United States v. Brennick,* 908 F.Supp. 1004, 1012–13 (D.Mass.1995) (finding that section 7212(a) was not unconstitutionally vague as applied).

### IV. Multiplicity.

Toliver also seeks to have count 1 dismissed because it is multiplicitous of counts 2 and 3. He contends that the government can only prove a violation of the obstruction statute by relying on the facts of his alleged false income tax filings. According to Toliver, there is no realistic likelihood of violating the narrow false filing statute without also violating the broad obstruction statute. On this basis, the defendant contends that he is being subjected to multiple punishments for identical conduct. The government asserts that section 7206(1) and section 7212(a) contain different elements and, accordingly, are

---

**13.** Toliver appears to also argue that section 7212(a) is overbroad. However, he does not specify any constitutionally protected activity which is either prohibited or deterred by the enforcement of section 7212(a). *See Grayned v. City of Rockford,* 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972).

sufficiently distinguishable and not multiplicitous.

I am unpersuaded by the defendant's arguments. The doctrine against multiplicity of charges is based on the Double Jeopardy clause of the Fifth Amendment and assures that "the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). However, a statute prohibiting a broad range of conduct may be applied simultaneously with a more narrowly tailored statute resulting in multiple punishments for one act. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). In determining the validity of an indictment containing multiple offenses, the appropriate inquiry is to assess whether Congress intended to prescribe multiple punishments for the same conduct. *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981).

In the absence of explicit congressional authorization, the Supreme Court has held that the test from *Blockburger*, 284 U.S. 299, 52 S.Ct. 180, should be applied. *Albernaz*, 450 U.S. at 340, 101 S.Ct. at 1142. Under *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. If an offense requires proof of a fact not required by the other offense, the *Blockburger* test is met and sentences may be constitutionally imposed under each statute even though there may be a substantial overlap in the proof offered to establish the crimes. *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975).

■ Under the *Blockburger* test, count 1 and counts 2 and 3 are not multiplicious. As the government has noted, the elements of a section 7206(1) violation differ from the elements of a section 7212(a) offense.[14]

In particular, section 7206(1) requires proof that the defendant acted "willfully." 26 U.S.C.A. § 7206(1) (West 1989 & Supp. 1997). Willfulness is defined as a "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991). Under section 7212(a), a defendant must have acted "corruptly" which "describes an act done with an intent to give some advantage inconsistent with the official duty and rights of others...." *Mitchell*, 985 F.2d at 1278 (quoting *United States v. Reeves*, 752 F.2d 995, 998 (5th Cir.1985) (citations and quotations omitted)). The difference in the proof required to establish these elements would satisfy the *Blockburger* test. *United States v. Swanson*, No. 96–4213, 1997 WL 225446, at *4 (4th Cir. May 5, 1997) (unpublished opinion).

Toliver, following the analysis adopted by the Second Circuit in *United States v. Seda*, 978 F.2d 779 (2d Cir.1992), contends that a "rigid" *Blockburger* test should not be applied. Instead, my assessment should extend beyond the provisions of the statutes to the substance of the allegations to determine if there is "no realistic likelihood of violating the narrow provision [section 7206(1) ] ... without also violating the broad provision [section 7212(a) ]...." *Seda*, 978 F.2d at 781.

I am not inclined to apply this analysis. This approach has been explicitly rejected by several circuits. *See United States v. Fraza*, 106 F.3d 1050, 1053–54 (1st Cir.1997); *United States v. Wolfswinkel*, 44 F.3d 782, 785 (9th Cir.1995). In *United States v. Allen*, 13 F.3d 105, 109 n. 4 (4th Cir.1993), the Fourth Circuit responded to a similar argument by noting, that *Blockburger* precluded an examination of the particular facts of a case.

---

14. To establish a section 7206(1) violation, the government must establish that "(1) the defendant made and subscribed to a tax return containing a written declaration; (2) the tax return was made under penalties of perjury; (3) the defendant did not believe the return to be true and correct as to every material matter; and (4) the defendant acted willfully." *United States v. Aramony*, 88 F.3d 1369, 1382 (4th Cir.1996). By contrast, a section 7212(a) violation exists if a defendant: (1) corruptly; (2) endeavored; (3) to obstruct or impede the administration of the tax code. *See* 26 U.S.C.A. § 7212(a) (West 1989 & Supp.1997).

Moreover, in a recent unpublished opinion, the Fourth Circuit found that a prosecution under both section 7212(a) and section 7206(1) was not multiplicitous and limited its analysis to the elements of the offenses. *Swanson*, 1997 WL 225446, at *4. On this basis, I find that count 1 and counts 2 and 3 are not multiplicitous.

### V. Statute of Limitations.

Toliver also moves for the dismissal of count 1 on the ground that the indictment does not contain sufficient allegations of a section 7212(a) violation within the applicable six-year limitations period.[15] In reply, the government asserts that count 1 alleges a continuing offense which includes sufficient conduct within the limitations period. The government further contends that Toliver's offense was only completed by the last act in furtherance of his scheme, alleged to have occurred in 1994, within the limitations period.

■■ I find that the indictment contains sufficient allegations of conduct occurring within the limitations period. An indictment lacking any allegation that an offense was committed within the relevant limitations period infringes a defendant's right "to be clearly informed of the nature and the cause of the accusation against him." *Nevius v. Sumner*, 852 F.2d 463, 471 (9th Cir.1988).

Toliver relies on *United States v. Davis*, 533 F.2d 921 (5th Cir.1976), and *United States v. Stoner*, 98 F.3d 527 (10th Cir.1996), for the proposition that an indictment which does not allege the commission of an overt act within the limitations period is subject to dismissal. This precedent, however, is inapplicable to a section 7212(a) offense. Although similar to a conspiracy in that a continuous course of conduct may be at issue, obstruction offenses do not require proof of

an overt act and an agreement. *See United States v. North*, 708 F.Supp. 372, 374 (D.D.C. 1988) ("[O]bstruction of justice ... may be charged by stating a continuous course of conduct....").

Count 1 of the indictment alleges that Toliver undertook a series of actions designed to conceal taxable income from the IRS. In furtherance of this scheme, the indictment specifically alleges that beginning in February 1991 and continuing through September 1994 Toliver downgraded first-class tickets, and purchased less expensive fares. Count 1 also alleges that between 1989 and 1994 Toliver procured false receipts, submitted them to the NBA to assist his concealment efforts and also provided false information to his tax preparer. These acts may or may not have occurred after February 12, 1991.

Despite this lack of specificity, Count 1 does allege specific acts within the limitations period, which although legal, were an integral part of the defendant's scheme. Moreover, the indictment also alleges an overall scheme which, although initiated prior to the limitations period, is alleged to have continued until 1994. *See United States v. Coia*, 719 F.2d 1120, 1124–25 (11th Cir.1983) (holding in the context of a conspiracy statute which did not require an overt act that an indictment satisfies statute of limitations if offense is alleged to have continued into limitations period).

### VI. Duplicity.

Toliver also moves for the dismissal of each count of the indictment because the counts are duplicitous. He asserts that count 1 contains multiple section 7212(a) violations and separate and distinct violations of section 7212(a) and section 7206(1).[16] Toliver premises a similar argument regarding counts 2 and 3 on the government's incorpo-

---

15. The parties agree that section 7212(a) prosecutions are governed by the six-year limitations period contained in 26 U.S.C.A. § 6531 (West 1989 & Supp.1997). *See Swanson*, 1997 WL 225446, at *2. Therefore, conduct occurring prior to February 12, 1991, is outside of the limitations period.

16. Toliver reasons that count 1 includes allegations of the concealment of income and inducing

the NBA to not comply with IRS regulations. The concealment allegations only rise to the level of a section 7212(a) violation once a false filing is made, a simultaneous violation of section 7206(1). He also contends that count 1 includes two distinct section 7212(a) violations: (1) the concealment of income and (2) inducing the NBA's improper conduct.

ration by reference of the count 1 allegations in these counts.

In reply, the government contends that it may and has charged a single continuous offense, which includes multiple offenses, within one count and that the risks presented by such a count may be minimized by a curative jury instruction. Toliver responds by asserting that the allegations of count 1 are not sufficiently related to be equated with a single continuous offense and that the government has failed to explicitly allege a continuous scheme.[17]

■ Duplicity is the "joining of two or more offenses in a single count." *United States v. Marshall*, 75 F.3d 1097, 1111 (7th Cir.1996). The potentially prejudicial effects to a defendant of duplicitous counts include: "improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and ... the danger that a conviction will result from a less than unanimous verdict as to each separate offense." *Id.* (quoting *United States v. Duncan*, 850 F.2d 1104, 1108 n. 8 (6th Cir.1988)).

■ Despite these concerns Fed. R.Crim.P. 7(c) expressly permits a single count to allege that an offense was committed by "one or more specified means." This rule has been construed to contemplate the joining of two or more acts in a single count, each of which would constitute a separate offense, without offending the doctrine of duplicity. *United States v. Berardi*, 675 F.2d 894, 897–98 (7th Cir.1982); *see United States v. Shorter*, 809 F.2d 54, 58 (D.C.Cir.1987). Although making such a distinction is difficult, a count alleging multiple acts is not duplicitous if the acts are part of a continuing course of conduct. *Berardi*, 675 F.2d at 898.

*Berardi*, which both parties rely on in support of their arguments, involved a prosecution under the obstruction of justice statute. *Berardi*, 675 F.2d at 895–97. The defendant was charged in a single obstruction count

with three separate incidents in which he furthered his endeavor to influence a witness to testify falsely before the grand jury. *Id.* at 897. The court rejected the defendant's argument that the count was duplicitous, instead finding that it was fair to characterize the allegations as a single continuous offense. *Id.* at 898.

In reaching this conclusion, the court relied on the fact that the acts were "closely interrelated," occurred within a relatively short time period, were all committed by the defendant, involved influencing a single witness and were in furtherance of a single objective. *Id.* The court also noted that the obstruction statute "contemplates a continuing course of conduct ... designed to further" such an objective. *Id.* ("[T]he commission of several acts in furtherance of the single object ... appears to be within the statutory definition of the offense of 'endeavoring' to influence a witness." *Id.* at 898 n. 7.).

The defendant also relies on recent decisions in *United States v. Daurham*, No. 2:96 CR 67JM (N.D. Ind. Jan. 30, 1997 and Mar. 24, 1997). In *Daurham*, the defendant was charged with three separate counts of section 7206(1) violations and one section 7212(a) obstruction violation. *Id.* The obstruction count included three paragraphs, similar to those in the section 7206(1) counts, which alleged the "concealment of income." *Id.* It also contained allegations that the defendant had instructed an employee to lie to the IRS and had himself made a false statement to the IRS. *Id.*

The court rejected the government's contention that the concealment allegations were sufficiently related to the other conduct to constitute a single continuous offense. *Daurham*, No. 2:96 CR 67JM (N.D.Ind. Jan. 30, 1997). "Concealment" was not "consummated" until a false return was filed and the "juxtaposition" of these "dissimilar" types of conduct led to the conclusion that these allegations were "more than multiple acts constituting a single offense." *Id.*

---

**17.** I find Toliver's arguments regarding counts 2 and 3 to be without merit. These counts delineate and are limited to allegations regarding a single section 7206(1) offense. The mere incorporation by reference of count 1's allegations, a practice permitted under Fed.R.Crim.P. 7(c), does not make these counts duplicitous.

In a subsequent ruling, the court concluded that the allegations regarding contacts with and statements to the IRS were unrelated and, thus, the count was duplicitous. *Daurham*, No. 2:96 CR 67JM (N.D.Ind. Mar. 24, 1997). Supplied with a bill of particulars, the court determined that the acts were separated by three years, involved different witnesses, and four different tax returns, personal and corporate. On this basis, the allegations were characterized as nothing more than an "ongoing practice of under reporting income" and too unrelated to be part of an obstruction scheme or endeavor.[18] *Id.*

 I find that count 1 is not duplicitous because the multiple acts alleged amount to a single continuous offense. All of the actions at issue were initiated or performed by the defendant. Each act was focused on achieving the same objective: concealing the income generated by the NBA's travel program and fabricating a paper trail to obstruct the IRS from detecting this concealment. I disagree with Toliver's conclusion that "concealment" was only significant to the extent that it coincided with a false filing. Concealment, in the context of section 7212(a) rather than section 7206(1), encompasses the filing of a false return but also the additional steps of creating a substantiating paper trail.

Although Toliver implies that the length of time at issue weighs against finding a continuous single offense, I believe that it favors this conclusion. Unlike *Daurham*, count 1 does not involve two distinct acts separated by three years. Instead, count 1 explicitly alleges that throughout the relevant time period Toliver continuously downgraded tickets to generate additional income. Each downgraded ticket produced income which would then need to be concealed, either through a false deduction or the creation of false receipts. Although the indictment does not use the word "scheme," or expressly indicate that all acts took place continuously, it does allege an on-going endeavor to obstruct the IRS's detection of this income.

*Berardi*, 675 F.2d at 898 n. 7. These practices were closely related in both time and purpose.

My disposition of this issue is further supported by the fact that obstruction statutes contemplate such continuing courses of conduct. *Berardi*, 675 F.2d at 898. I also find that count 1 will not result in the prejudicial effects which are at the core of the duplicity doctrine. Toliver has access to the government's theory of the case, and thus, cannot claim a lack of notice of the nature of the charges nor would he be unable to plead double jeopardy in a subsequent proceeding. I do not foresee a danger that the jury will reach a non-unanimous verdict given that I have found the offense to be continuous. Any potential for jury confusion from the multiple allegations can be remedied with a proper instruction, *Berardi*, 675 F.2d at 899, and the defendant may also seek to submit special interrogatories to the jury.

## VII. Attorney-Client Privilege.

Toliver has filed a motion seeking the dismissal of the indictment, the suppression of certain documents or an evidentiary hearing based on the government's invasion of his attorney-client privilege. He asserts that, as a member of the Union, he had an attorney-client relationship with attorney Fred Slaughter, who represented the Union during the CBA negotiations and later turned over documents to the government and testified before the grand jury.

Toliver's articulates several theories to establish the existence of an attorney-client relationship: (1) Slaughter's representation of the Union, an unincorporated association, extended to representation of its members; (2) Slaughter's representation of Union constituted defacto representation of its members; (3) Toliver had a common interest in communications between the Union and Slaughter; and (4) a fiduciary relationship existed between Slaughter's client, the Union, and Toliver. Toliver also contends that the documents at issue involved communications to union members regarding Slaugh-

---

**18.** The court noted, but did not attributed great significance to, the government's failure to use the word "scheme" in the obstruction count.

*Daurham*, No. 2:96 CR 67JM (N.D.Ind. Mar. 24, 1997).

ter's negotiations with the NBA and, as such, are privileged. The government argues that no attorney-client privilege exists due to the lack of an attorney-client relationship, the absence of privileged communications, the defendant's waiver of the right to assert the privilege and because Toliver was seeking to commit a crime.

■ At the request of the parties, I have examined certain grand jury material under seal, relevant to this issue. At this point, I do not find that an attorney-client relationship existed between the defendant and Slaughter and, on this basis, the privilege should not apply.[19] The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Invocation of the privilege, however, may be at odds with the "truthseeking" mission of the judicial system and, accordingly, is "strictly construed," *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir.1986), and is "not favored by federal courts." *In re: Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir.1984).

■ A party asserting the privilege has the burden of establishing that: (1) the attorney-client relationship existed; (2) the communications at issue were privileged and; (3) the privilege was not waived. *Sheet Metal Workers Int'l Ass'n v. Sweeney*, 29 F.3d 120, 125 (4th Cir.1994). In *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir.1982), the Fourth Circuit more elaborately noted that the privilege requires that:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court ... and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for

the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or a tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. (quoting *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.C.Mass 1950)).

No evidence exists to suggest that Toliver was or sought to become a "client" of Slaughter's. Although by affidavit the defendant now asserts his belief that Slaughter represented him, Toliver did not solicit legal advice from Slaughter nor did he communicate any confidential information. *See Mathis*, No. CR–1–97–15 (S.D.Ohio Jun. 2, 1997).

For these reasons, I hold that there has not been a showing sufficient to justify a pretrial evidentiary hearing on the attorney-client privilege issue.

### VIII. Bill of Particulars.

The defendant requests a bill of particulars identifying the method of proof to be used to demonstrate the under-reporting of income and other information necessary to establish the amount and source of the allegedly taxable income as well as any allegedly false statements made by the defendant. Toliver relies on precedent more liberally granting bills of particulars in tax cases, due to their complexity. The government asserts that it has already informed the defendant of its intended method of proof, and has supplied an initial estimate of the amount of unreported income for the 1992 and 1993 tax years. The government further contends that the indictment adequately appraises Toliver of the charges against him and that any need for a bill of particulars is offset by his access to the government's files.

I will deny the motion. "An indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future

---

**19.** Nor do I believe that is sufficient evidence that the communications at issue were privileged or that the requisite degree of confidentiality existed to preserve their privileged nature. *See*

*Mathis*, No. CR–1–97–15 (S.D.Ohio Jun. 2, 1997). However, I only chose to address the issue of the attorney-client relationship, which is dispositive of the defendant's motion.

**1042**

prosecution for the same offense." *United States v. Daniels,* 973 F.2d 272, 274 (4th Cir.1992). Toliver does not allege that the indictment omits, nor does it, an element of the offenses charged, a defect which is not curable through a bill of particulars. Nor would Toliver be unable to plead double jeopardy in a subsequent proceeding. The indictment alleges that he obstructed the administration of the tax code over a several year period by engaging in a scheme to conceal income by downgrading tickets and that he subscribed false returns for the 1992 and 1993 tax years.

■ In essence, Toliver argues that the indictment's lack of specificity with regard to the method of proof, and the amount and source of concealed income deprives him of his opportunity to prepare a defense. I find this argument to be without merit. The government has already disclosed to Toliver its intended method of proof and has provided an estimate of the amount of omitted income. The indictment informed Toliver of the alleged source of the income, his actions in the concealment scheme, and the time period during which his actions allegedly occurred. I believe this is sufficient to allow him to prepare an adequate defense. *See United States v. Pottorf,* 769 F.Supp. 1176, 1183 (D.Kan.1991) (refusing to grant a bill of particulars as to tax evasions counts where indictment provided the tax years at issue, the specific actions of the defendant and the elements of the offense).

Moreover, in this case, the government has opened its investigative files to allow the defense to review its materials. Such a policy further reduces the need for a bill of particulars in this instance. *United States v. Amend,* 791 F.2d 1120, 1125–26 (4th Cir. 1986); *see United States v. Canino,* 949 F.2d 928, 949 (7th Cir.1992) ("[T]he 'open file' policy ... mak[es] the bill of particulars unnecessary."). On this basis, the motion is denied.

*IX. Strike Portions of Indictment.*

Toliver has also moved to have stricken those portions of the indictment which refer to his alleged failure to file accurate state income tax returns and which use the term "bogus" with reference to submitted travel receipts. He contends that the allegation regarding his state tax returns is irrelevant and prejudicial while the term "bogus" is prejudicial and inflammatory. The government argues that the state returns are relevant to the alleged paper trail designed to conceal the income and that the use of the term "bogus" is neither prejudicial nor inflammatory.

Pursuant to Fed.R.Crim.P. 7(d), it is within my discretion to strike charges in the indictment which are irrelevant or immaterial, 1 Wright , *Federal Practice and Procedure,* § 127 at 277 (2d ed.1982), or not essential to the charge, *United States v. Kemper,* 503 F.2d 327, 329 (6th Cir.1974), or unnecessary, or inflammatory, *Dranow v. United States,* 307 F.2d 545, 558 (8th Cir.1962). "Rule 7(d) has been strictly construed against striking surplusage...." *Kemper,* 503 F.2d at 329.

I will reserve judgment on this issue until after the presentation of evidence at trial. I will then reassess whether these allegations could prejudicially impress the jury, and, if necessary, will redact portions of the indictment prior to its presentation to the jury.

It is so **ORDERED.**