OPINION
 

 LUTTIG, Circuit Judge:
 

 Lawrence Restell Allen appeals from his convictions of knowingly and fraudulently concealing assets in a bankruptcy case, in violation of 18 U.S.C. § 152; making a false statement in a matter within the jurisdiction of the United States Probation Office, in violation of 18 U.S.C. § 1001; and making a false claim against the United States, in violation of 18 U.S.C. § 287. Finding no error, we affirm.
 

 I.
 

 On June 24, 1987, Allen filed a Chapter 7 bankruptcy petition, seeking discharge of over $29,000 in unsecured debt. He listed his assets as having a total value of $4,800, including $300 in “[wjearing apparel, jewelry, firearms, sports equipment and other personal possessions.” J.A. at 275. Over the next four years, however, Allen filed claims with two insurance companies in which he reported thefts of personal property worth over sixty thousand dollars. Among the items allegedly stolen were four cashmere overcoats, fifteen suits, twelve ultrasuede coats, seventy pairs of pants, one hundred pairs of shoes, ten sport coats, and two rings.
 
 See id.
 
 at 426-427, 457-58. In sworn statements to the insurance companies, Allen stated that he had owned almost all of these items, as well as a Piaget watch worth approximately thirty thousand dollars, at the time of his bankruptcy petition.
 
 See id.
 
 at 466-67.
 

 On June 1, 1992, Allen was indicted under 18 U.S.C. § 152 for knowingly, willfully, and fraudulently concealing assets from authorities when he filed his Chapter 7 petition, and on June 5, 1992, he was arrested and taken to the United States Marshal’s office in Charlotte, North Carolina. While at the Marshal’s office, Allen was asked questions by Leonard Kornberg, a student contractor with the United States Probation Office, in order to determine whether he qualified for court-appointed counsel. Kornberg warned
 
 *107
 
 Allen that if he provided false information or omitted information, he would be prosecuted, but Kornberg did not read Allen the rights specified in
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Kornberg then requested Allen to list his assets, and as Allen replied, Kornberg completed a Form CJA 23 Financial Affidavit, which Allen signed at the conclusion of the interview. Based on the information in the CJA 23, a United States Magistrate appointed counsel to represent Allen.
 

 After counsel was appointed, the government learned that Allen had not disclosed to Kornberg that he owned a 1986 Porsche with a bluebook value of over ten thousand dollars. The government thereafter filed a superseding indictment, charging Allen with the additional offenses of making a false statement in a matter within the jurisdiction of the United States Probation Office, in violation of 18 U.S.C. § 1001, and of making a false claim against the United States, in violation of 18 U.S.C. § 287. After trial in the United States District Court for the Western District of North Carolina, a jury convicted Allen on all three counts for which he had been charged. He was sentenced to three years imprisonment on the knowing concealment violation, and six months imprisonment on each of the false statement and false claims violations, the latter sentences to run concurrently with each other but consecutively to the three-year term.
 

 II.
 

 Allen argues in this court first that his convictions under 18 U.S.C. § 287, for making a false claim against the government,
 
 [1]
 
 and under 18 U.S.C. § 1001, for making a false statement in a matter within the jurisdiction of a department of the United States,
 
 [2]
 
 are “multiplicitous.” He contends that he committed only one act — lying about the Porsche during his interview with Kornberg — and therefore that he could be convicted and sentenced for violation of
 
 either
 
 section 287 or section 1001, but not both.
 

 To begin with, we believe that Allen has misunderstood the doctrine of “multiplicity.” That doctrine, strictly speaking, refers to the charging of each act in a series of identical acts as though it were a separate crime. See,
 
 e.g.,
 
 2 Wayne
 
 R.
 
 LaFave & Jerold H. Israel,
 
 Criminal Procedure
 
 § 19.-2(e), at 457-58 & n. 121 (1984) (multiplicity refers to the circumstance where “a series of
 
 repeated acts are charged as separate crimes
 
 but the defendant claims they are part of a continuous transaction and therefore a single crime”) (emphasis added). It can also refer to “the charging of a single offense in several counts.” 1 Charles A. Wright,
 
 Federal Practice and Procedure
 
 § 142, at 469 (2d ed. 1982); LaFave & Israel,
 
 Criminal Procedure
 
 § 19.2(e), at 457;
 
 United States v. Segall,
 
 833 F.2d 144, 146 (9th Cir.1987). Allen, however, does not challenge so much his indictment, as his convictions and sentences. Both in his briefs,
 
 see, e.g.,
 
 Appellant’s Br. at 12, 17, 18, 19; Reply Br. at 1, and at argument, Allen’s counsel contended that Allen made only one false statement
 
 [3]
 
 and therefore could not be
 
 *108
 

 punished
 
 under both section 287 and section 1001. This is more properly understood as a classic double jeopardy claim.
 

 It has long been established that a defendant may be tried, convicted and sentenced for two separate offenses, even though he committed a single act.
 
 See, e.g., Albernaz v. United States,
 
 450 U.S. 333, 344-45 n. 3, 101 S.Ct. 1137, 1145 n. 3, 67 L.Ed.2d 275 (1981) (“It is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause.”) (citations omitted). In
 
 Blockburger v. United States,
 
 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the defendant was sentenced to two consecutive five-year terms for a single sale of morphine hydrochloride. The sale violated sections 1 and 2 of the Harrison Narcotic Act: section 1 prohibited sales of morphine not made from a stamped package, and section 2 prohibited sales not made pursuant to a written order from the purchaser. A unanimous Supreme Court held that “where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.”
 
 Id.
 
 at 304, 52 S.Ct. at 182;
 
 see also Ball v. United States,
 
 470 U.S. 856, 862, 105 S.Ct. 1668, 1672, 84 L.Ed.2d 740 (1985) (question is whether proof of each offense “necessarily” requires proof of the other offense). Because section 1 required proof that the sale was not made from a stamped package (and section 2 did not), and because section 2 required proof that the sale was not made pursuant to a written order (and section 1 did not), the Court held that two offenses had been committed and, as a consequence, that the defendant could lawfully be convicted and punished under both statutes.
 

 The Supreme Court has steadfastly adhered to the
 
 Blockburger
 
 analysis when determining whether the legislature intended to authorize multiple punishments for a particular act,
 
 see, e.g., Missouri v. Hunter,
 
 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983) (“With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.”); Alb
 
 ernaz,
 
 450 U.S. at 344, 101 S.Ct. at 1144 (same), with only the slight modification that, because the analysis is only a “rule of statutory construction,”
 
 Whalen v. United States,
 
 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980), it “should not be controlling where ... there is a clear indication of contrary legislative intent.”
 
 Albernaz,
 
 450 U.S. at 340, 101 S.Ct. at 1143;
 
 accord Hunter,
 
 459 U.S. at 367, 103 S.Ct. at 678.
 

 Analyzing sections 1001 and 287 under
 
 Blockburger,
 
 it is evident that in enacting these two provisions, Congress did create two distinct offenses.
 
 See United States v. Johnson,
 
 284 F.Supp. 273, 277-78 (W.D.Mo.1968), aff
 
 'd,
 
 410 F.2d 38 (8th Cir.),
 
 cert. denied,
 
 396 U.S. 822, 90 S.Ct. 63, 24 L.Ed.2d 72 (1969). Section 287 requires proof that a false
 
 claim
 
 was made against the government, a fact that section 1001 does not require, because not every false statement to government officials comprises a claim against the government for money or services. Similarly, section 1001 requires proof of a false
 
 statement,
 
 a fact that section 287 does not require, because a false claim against the government can be made without making a false statement — such as by endorsing and cashing a check to which one is not entitled,
 
 see, e.g., United States v. Branker,
 
 395 F.2d 881, 889 (2d Cir.1968),
 
 cert. denied sub nom. Lacey v. United States,
 
 393 U.S. 1029, 89 S.Ct. 639, 21 L.Ed.2d 573 (1969);
 
 Dimmick v. United States,
 
 116 F. 825 (9th Cir.1902),
 
 cert. denied,
 
 189 U.S. 509, 23 S.Ct. 850, 47 L.Ed. 923 (1903) (holding that demand upon a bill already paid or unauthorized demand upon unpaid bill constitutes a false claim even though bill itself contains no false statement);
 
 see also United States v. Lopez,
 
 420 F.2d 313, 314 (2d Cir.1969). Because it appears from the language of the statutes that Congress intended to create two distinct offenses in sections 287 and 1001, Allen can only prevail on his double jeopardy claim if Congress elsewhere clearly manifested an in
 
 *109
 
 tention not to authorize multiple punishments.
 
 [4]
 

 We can find no manifestation of such an intent. The predecessor to sections 1001 and 287 was 18 U.S.C. § 80, which, prior to 1934, was primarily a false claims statute, although it also proscribed false statements made for the purpose of defrauding the government. In 1934, section 80 was amended to remove the latter specific-purpose requirement, so that in false statement prosecutions, there was no longer any “restriction to cases involving pecuniary or property loss to the government.”
 
 United States v. Gilliland,
 
 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941). In 1948, as if to reinforce the 1934 amendments, section 80 was separated into the two provisions that exist today: section 287, which proscribes false claims
 
 qua
 
 claims, and section 1001, which proscribes false statements
 
 qua
 
 statements. The most reasonable inference from the facts that Congress separated section 80 as it did, placed the provisions in different parts of the United States Code, and provided each with its own section on punishment, is that Congress intended that defendants like Allen could lawfully be punished twice for violating both statutes in a single transaction.
 
 See Albernaz,
 
 450 U.S. at 336, 101 S.Ct. at 1140.
 
 [5]
 

 in.
 

 Allen next contends that the CJA 23 and other evidence obtained from his interview with Kornberg should have been excluded because Kornberg did not read him his rights under
 
 Miranda v. Arizona.
 
 Allen argues that a Miranda warning was required because he was being interrogated while in custody.
 

 We disagree that Kornberg was required to read Allen his
 
 Miranda
 
 rights before questioning him for purposes of determining whether he was entitled to court-appointed counsel. In
 
 Rhode Island v. Innis,
 
 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Supreme Court defined “interrogation” as “words or actions on the part of the police (other than those normally incident to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.”
 
 Id.
 
 at 301, 100 S.Ct. at 1689-90. Allen contends that Kornberg had reason to expect an incriminating response from him because the subject matter of Kornberg’s questions was Allen’s assets, and the crime for which Allen at that time had been indicted was the concealment of assets in his bankruptcy case. Even as
 
 *110
 
 suming that Kornberg’s conduct fell outside of that which is “normally incident to arrest and custody,” we do not believe it was foreseeable to Kornberg that Allen would have made an incriminating response, given that almost five years had lapsed since Allen had filed the Chapter 7 petition on the basis of which he was indicted, and that Kornberg’s questions sought information only as to Allen’s then-current assets.
 
 [6]
 

 IV.
 

 Finally, Allen argues that the evidence presented at trial was insufficient to support his conviction for knowingly concealing assets from the government in his Chapter 7 petition. Allen contends that the government’s case was based on the fact that his sworn statements to the insurance companies conflicted with his representations made in the Chapter 7 filing, and that therefore the evidence was as consistent with a finding that he had lied to the insurance companies as with a finding that he had lied to the bankruptcy court. We need not pause long over this argument. From the inconsistencies between Allen’s statements in the Chapter 7 petition and his representations to the insurance companies, a jury could reasonably have concluded that Allen should not be believed when he testified that he was lying to the insurance companies but not to the government.
 

 The judgment entered on Allen’s convictions is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . 18 U.S.C. § 287 provides in relevant part:
 

 Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States ... knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.
 

 [2]
 

 . 18 U.S.C. § 1001 provides in relevant part:
 

 Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully ... makes any false, fictitious or fraudulent statements or representations ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 

 [3]
 

 . Despite his characterization of Allen’s conduct in this manner, many of the cases cited by Allen’s counsel concern the prosecution of a series of repeated acts under one statutory provision.
 
 See,
 
 e.g.,
 
 United States v. Jameson,
 
 No. 91-5848, 1992 WL 180146, at *9-10, 1992 U.S.App. LEXIS 17565, at * 25-27 (4th Cir. July 29, 1992) (per curiam) (defendant convicted four times under 18 U.S.C. § 1001 for making four separate false statements);
 
 United States v. Salas-Camacho,
 
 859 F.2d 788, 791 (9th Cir.1988) (two convictions under 18 U.S.C. § 1001 for two false statements);
 
 United States v. Olsowy,
 
 836 F.2d 439, 443 (9th Cir.1987),
 
 cert. denied,
 
 485 U.S. 991, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988) (three convictions under 18 U.S.C. § 1001 for three false statements).
 

 [4]
 

 . Allen's counsel intimated at argument that in applying
 
 Blockburger,
 
 we should look at the particular facts offered to convict Allen. In multiple punishment cases, the Supreme Court has consistently stated, however, that the exclusive focus of the
 
 Blockburger
 
 rule is upon the elements of the statutory provisions in question.
 
 See, e.g., Blockburger,
 
 284 U.S. at 304, 52 S.Ct. at 182 (“Each of the offenses created requires proof of a different element”) (emphasis added);
 
 Iannelli v. United States,
 
 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975) ("As
 
 Blockburger
 
 and other decisions applying its principle reveal, the Court’s application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the
 
 Blockburger
 
 test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.”) (citations omitted);
 
 Whalen,
 
 445 U.S. at 694 n. 8, 100 S.Ct. at 1439.
 

 [5]
 

 . The government maintains that "two incidents” underlay Allen's convictions,
 
 see also
 
 Ap-pellee’s Br. at 11-12 (“defendant made one false statement and one false claim to two separate' officials”), presumably because the CJA 23, which included the false statement to Kornberg, was in turn provided to the United States magistrate for the purpose of obtaining court-appointed counsel. The record does not disclose precisely what occurred after Allen signed the CJA 23, and neither Allen's counsel nor the government could satisfactorily answer the court's questions on this point at argument. However, the government is almost certainly correct in its assertion that Allen made a claim on the government, distinct from his false statement about his ownership of the Porsche. Even assuming that Allen did not physically complete the CJA 23 form or himself actually submit the claim for appointed counsel, at a minimum he constructively made or presented the claim. The CJA 23 form, which Allen signed, is entitled "Financial Affidavit in Support of Request for Attorney, Expert or Other Court Services Without Payment of Fee.” J.A. at 7. Allen thus provided answers to the CJA 23 questions, knowing that the purpose of the questions was to determine his eligibility for courtappointed counsel, and, of course, he accepted representation by appointed counsel. Assuming that Allen was prosecuted for two separate acts, he would, of course, have no double jeopardy claim at all.
 
 See United States v. Olsowy,
 
 836 F.2d at 442.
 

 [6]
 

 . The Financial Affidavit requests information only about the affiant's current assets, with the single exception of a question as to whether he has "received within the past 12 months any income from a business, profession or other form of self-employment ... or other sources.” J.A. at 7.