**UNITED STATES of America, Plaintiff,**

v.

**Henry Clinger ARMSTRONG, Defendant.**

**Action No. 2:97cr14.**

United States District Court,
E.D. Virginia,
Norfolk Division.

July 30, 1997.

---

James A. Metcalfe, Asst. U.S. Atty., Norfolk, VA, C. Patrick Hogeboom, III, Trial Atty., Tax Division, U.S. Dept. of Justice, Washington, DC, for U.S.

Franklin A. Swartz, Rabinowitz, Rafal, Swartz, Taliaferro & Gilbert, Norfolk, VA, for defendant.

## OPINION

REBECCA BEACH SMITH, District Judge.

This matter came before the court on defendant's Motion for Bill of Particulars, Motion to Compel the Government to Elect, Motion to Dismiss Count One, and Supplemental Motion to Dismiss Count One. The court heard argument on these motions on June 12, 1997. For the reasons stated from the bench, the court DENIES defendant's Motion for Bill of Particulars. For the reasons stated below, the court DENIES defendant's Motion and Supplemental Motion to Dismiss Count One, and DENIES his Motion to Compel the Government to Elect.

### I. Factual and Procedural History

Defendant was a referee and employee of the National Basketball Association (NBA), and a member of the National Association of Basketball Referees (NABR). The NBA employs referees under a collective bargaining agreement with the NABR. For their travel to NBA games, the NBA either provides the referees with airline tickets, or reimburses referees who purchase their own airline tickets. Under the collective bargaining agreement, the NBA was required to permit the referees to travel first class air, instead of coach, on trips of more than two hours scheduled duration. For such trips, the NBA was also required to permit the referees to elect to fly in other than first class and "down grade" their first class tickets, and keep the difference in ticket price as a supplement to their income.

In August 1989, the Internal Revenue Service (IRS) issued Notice 894, which notified employers of a new tax rule starting in 1989 which affected the way employers accounted to the IRS for payments made to employees for employee business expenses, which would include the travel expense of the referees. The IRS explained that this new tax rule, which is codified in 26 U.S.C. § 62, required employers to report amounts paid to their employees for business expenses as wages on the W-2 form if: (1) the employee did not substantiate the business expenses to the employer (furnish receipts or other documentation), or (2) the employer advanced money

to the employee for business expenses, and did not require the employee to return, or the employee did not return, any amount not used for business expenses. IRS Notice 894 (Aug.1989) (Pl.'s Ex. 4). If the employee substantiates all business expenses and returns any excess, the IRS instructed employers not to include these amounts as wages on the employee's W–2 form. *Id.* The new tax law also provided for accounting and reporting of reimbursements for per diem expenses. For 1989 and 1990, the NBA reported the referees' reimbursements for business expenses, such as airline travel, to the IRS on 1099 forms, as miscellaneous income. Thereafter, the NBA accounted to the IRS for reimbursements and income on the employee's W–2 forms.

While the NBA's methods and procedures for providing airline transportation and travel expense reimbursement for the referees varied over time, the NBA always allowed the referees to "down grade" their airline tickets to supplement their income, as was required under the collective bargaining agreement. From 1989 through February 1991, a travel service provided each referee with a monthly travel itinerary for the next month of games, a first class ticket for each destination requiring travel of more than two hours, and a coach ticket for all other destinations.

From March 1991 through September 1992, in order to enable the referees to reduce their amount of withholdings and the amount of business expense reimbursement reported as income, the NBA offered three different types of travel options. Under the "first option," the referee purchased his tickets with an NBA credit card. If he chose to "down grade" his airline tickets, the NBA would receive credit for that amount and forward the credit to the referee less twenty percent withheld for the IRS. Under the

"second option," the travel service routed the referee to his scheduled games and provided an itinerary which would determine the cost of airfare. The NBA then issued a check to the referee based on that itinerary, minus twenty percent withholding for the IRS. The NBA did not require the referee to provide information about his actual travel expenses; in the referee's W–2 form, the NBA simply reported the entire travel expense reimbursement paid by the NBA. Under the "third option," the travel service routed the referee to his scheduled games and provided an itinerary, which determined the cost of the airfare for purposes of reimbursement by the NBA. The referee received the itinerary and purchased his own tickets, and then later submitted a travel voucher to the NBA to substantiate his actual expenses. If the referee chose to "down grade" his first class ticket to coach, or fly on a less expensive ticket,[1] the difference between the reimbursed expense and the actual expense was treated by the NBA as taxable income subject to withholding. Instead of reporting the entire travel expense reimbursement, the NBA only reported this "difference" as taxable income in the referee's W–2 form, as it thought it was entitled to do under the IRS code and regulations.[2] According to the government, from March 1991 through September 1992, defendant used both options two and three.

From October 1992 through September 1995, the collective bargaining agreement of the NBA and NABR provided only one travel expense reimbursement method, which was used by defendant. Each referee received an itinerary from the travel service and a check from the NBA to match the total travel expense shown on the itinerary. The NBA then required the referee to submit to the NBA the actual cost of his airfare, along

---

1. The government's reference in paragraph A.6.c.3. of the Indictment to "fly[ing] on a less expensive ticket" may mean that the referees used "frequent flier" miles to pay for, or lower the actual expense of, their tickets, while the NBA reimbursed them for the cost of the full airline fare without such a discount.

2. It appears that the reason the NBA reported only the "difference" as income in the referees'

W–2 forms is because the NBA thought this third reimbursement plan was an "accountable plan," rather than a "nonaccountable plan." These two types of reimbursement plans are explained in detail at *infra* Part II.A.1. The government admits that the second option, and the NBA's reimbursement plan from 1989 through February 1991, were both nonaccountable plans.

with a valid ticket that the referee used.[3] Any difference between the advance amounts paid to the referee by the NBA, and the tickets actually used and submitted to the NBA by the referee was reported by the NBA on the referee's W–2 form as taxable income subject to withholding. The NBA deducted any withholding requirements resulting from income due to "down grading" of tickets from the following month's air travel allowance check or the payroll.

In Count I of the Indictment, the government alleges that, from 1989 through 1994, defendant unlawfully and corruptly obstructed and impeded, and endeavored to obstruct and impede, the due administration of the Internal Revenue laws, in violation of the "omnibus" clause of 26 U.S.C. § 7212(a).[4] According to the government, defendant received first class or full price coach tickets, which he "down graded" to lower cost tickets, and he retained the difference in price, which was reportable income. He caused a travel agency to issue him airline tickets at the most economical fares available for his actual travel to the NBA game assignments. In addition, defendant caused a travel agency to issue him "bogus" first class or full price coach airline ticket stubs, receipts, and invoices.[5] Defendant submitted the bogus airline ticket stubs, receipts, and invoices to the NBA, and represented to the NBA that he had traveled on first class or full price coach fares, when he had actually used lower cost tickets and pocketed the difference.

According to the government, defendant's conduct caused the NBA to understate substantially defendant's income in his W–2 forms and an amended W–2 form for a number of years, and caused the NBA to fail to withhold the correct amount of taxes. Defendant also allegedly provided false information to, and withheld material information from, his tax return preparer with regard to his travel expense reimbursements and income, with the result that defendant prepared and filed materially false individual income tax returns which understated his income and overstated his travel-related expenses.

Counts II through VI charge defendant with making false statements concerning his travel expenses and total income on his federal income tax returns, under penalty of perjury, in violation of 26 U.S.C. § 7206(1).[6] Count II alleges that defendant made such statements on March 27, 1991, in his 1990 federal income tax return. Count III alleges he made such statements on March 20, 1992, in his 1991 federal income tax return. Count IV alleges he made such statements on December 9, 1992, in an amended 1991 federal income tax return. Count V alleges that he made such statements on April 12, 1993, in his 1992 federal income tax return. Count VI alleges that he made such statements on

---

3. The government indicates in the Indictment that this was done "[t]o satisfy the IRS withholding requirement," Indictment ¶ A.6.d.; however, the court believes the NBA required referees to submit this information because it thought it was using an accountable reimbursement plan.

4. Section 7212(a) provides in pertinent part:
   *Whoever* corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or *in any other way corruptly* or by force or threats of force (including any threatening letter or communication) *obstructs or impedes, or endeavors to obstruct or impede, the due administration of [the internal revenue laws], shall be subject to criminal punishment upon conviction. 26 U.S.C. § 7212 (emphasis added). Defendant is charged in Count I with violating the underlined clause of the statute, called the "omnibus" clause.*

5. Although defendant was allegedly "down grading" his first class tickets after September 1989,

it was not until October 1991, that the Indictment alleges he procured bogus airline ticket stubs, receipts, and invoices. According to the Indictment, from October 1991, through December 31, 1991, and from October 1992, through April 1994, defendant caused a travel agency to provide him with the passenger portion of tickets showing first class or full price coach fares when in fact those tickets had been voided or the flight reservations canceled. Indictment at 10–12. Defendant also allegedly caused the travel agency to issue false invoices in June 1992. *Id.* at 11.

6. Section 7206(1) makes it a crime for any person who:
   [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter.
   26 U.S.C. § 7206(1).

April 12, 1994, in his 1993 federal income tax return.

Defendant filed several pretrial motions on April 9, 1997, including his Motion to Dismiss Count One and Motion to Compel the Government to Elect. Defendant filed his Supplemental Motion to Dismiss Count One on April 29, 1997, which in effect was a motion to strike portions of Count I of the Indictment. The government filed its response to these motions on May 9, 1997. On June 12, 1997, the court heard argument on these motions. The matter is now ripe for determination.

## II. Analysis

### A. Defendant's motion to strike allegations in Count I

In his supplemental motion to dismiss Count I, defendant argues that he could not legally "cause" the issuance of false W–2 forms, as alleged in Count I of the indictment, under the applicable IRS regulations. According to defendant, the NBA's reimbursement plan was always a nonaccountable rather than an accountable plan.[7] For a nonaccountable plan, the NBA was required to report the full amount of reimbursement payments it issued to defendant as income on his W–2 forms, and thus any information provided by defendant to the NBA concerning his actual travel expenses or income would be irrelevant. Since his submissions would not affect defendant's expenses or income reported by the NBA on his W–2 forms in a nonaccountable plan, defendant claims he could not have induced the NBA to under report his income, because the NBA was always required to report all reimbursement payments as income. Thus, defendant asks that all allegations concerning the purported issuance of false W–2 forms by the NBA should be stricken from the Indictment, and not relied upon for the § 7212(a) charge in Count I.

7. As noted previously, *see supra* note 2, nonaccountable and accountable plans will be explained in detail at *infra* Part II.A.1.

8. According to the government, there are several reimbursement plans at issue here. It is the

In addressing defendant's argument, the court must decide two issues. First, the court must determine whether all of the NBA reimbursement plans at issue are nonaccountable plans.[8] Second, if the NBA plans are nonaccountable, the court must then determine whether to strike from the record the allegations in Count I that defendant procured and submitted bogus airline ticket stubs, receipts, and invoices to the NBA, and caused the NBA to issue false W–2 forms. While the court finds that the NBA's reimbursement plans are nonaccountable, the court declines to strike these allegations from the record.

### 1. The NBA reimbursement plans are nonaccountable

In order to explain the court's finding that all of the NBA reimbursement plans are nonaccountable, a brief discussion of the applicable Internal Revenue Code and regulations is necessary. Under 26 U.S.C. § 62(a) of the Internal Revenue Code, "adjusted gross income" is defined as gross income minus deductions. Section 62(a)(2)(A) allows a taxpayer, in some instances, to deduct from his gross income those reimbursement payments for business expenses paid or incurred by the taxpayer, "under a reimbursement or other expense allowance arrangement with his employer." However, § 62(c) provides that:

For purposes of subsection 62(a)(2)(A), an arrangement shall in no event be treated as a reimbursement or other expense allowance arrangement if—

(1) such arrangement does not require the employee to substantiate the expenses covered by the arrangement to the person providing the reimbursement, or

(2) such arrangement provides the employee the right to retain any amount in excess of the substantiated expenses covered under the arrangement.

26 U.S.C. § 62(c); *see* Internal Revenue Service, Department of the Treasury 26 C.F.R.

NBA plan offered from October 1992 through September 1995, which the government claims "may be considered an accountable plan." Pl.'s Subm. of Add'l Info. (filed June 11, 1997).

§ 1.62–2(b) (corresponding regulations, which discuss 26 U.S.C. § 62(c)).

For purposes of 26 U.S.C. § 62(a)(2)(A) and 26 C.F.R. § 1.62–2, a "reimbursement or other expense allowance arrangement" is defined by IRS regulation § 1.62–2(c)(1) as an arrangement that meets the following three criteria: (1) expense reimbursements shall be only for business related activities, *id.* § 1.62–2(d), (2) the expenses must be substantiated to the employer, *id.* § 1.62–2(e), and (3) the arrangement must require any excess reimbursement to be returned to the employer within a reasonable time, *id.* § 1.62–2(f). If an employer's reimbursement plan meets these three criteria for a "reimbursement or other expense allowance arrangement," *all* of the amounts paid under the employer's reimbursement arrangement will be treated as paid under an "accountable plan." *Id.* § 1.62–2(c)(2)(i). When an employer reimburses business expenses under an "accountable plan," reimbursements made pursuant to the plan are deducted from the employee's gross income, are not reported as wages or other compensation on the employee's W–2 form, and are exempt from the withholding and payment of employment taxes. *Id.* § 1.62–2(c)(4).

If the arrangement does not satisfy one or more of the above three criteria for a "reimbursement or other expense allowance arrangement," all amounts paid under the arrangement are treated as paid under a "nonaccountable plan." *Id.* § 1.62–2(c)(3). If the reimbursement payment is made pursuant to a "nonaccountable plan," the *entire* payment is included in the employee's gross income. *Id.* § 1.62–2(c)(5). The entire payment must be reported as wages or other compensation on the employee's W–2 form, and it is subject to withholding and payment of employment taxes. *Id.* Accordingly, an employee may prefer to be reimbursed business expenses under an accountable rather than a nonaccountable plan, because an accountable plan reduces reportable gross in-

come and the amount of withholdings and taxes for that employee.

If the employer's arrangement meets the three criteria listed above for a "reimbursement or other expense allowance arrangement,"[9] but the employee fails to return reimbursement amounts in excess of substantiated expenses to the employer within a reasonable period of time, the regulations provide a "special rule for failure to return excess." *Id.* § 1.62–2(c)(2)(ii) and (3)(ii). Under this rule, "only the amounts paid under the arrangement that are *not in excess* of the substantiated expenses are treated as paid under an *accountable* plan." The "amounts paid under the arrangement that are *in excess* of the substantiated amounts are treated as paid under a *nonaccountable* plan." *Id.* (emphasis added).

■ In this case, the government contends that the NBA reimbursement plan used from October 1992 through September 1995 may be considered an accountable plan. Pl.'s Subm. of Add'l Info. at 6.[10] Defendant, on the other hand, contends that all of the NBA plans are nonaccountable. Based on the record, and the IRS code and regulations, the court agrees with defendant that none of the NBA reimbursement plans are accountable plans, nor can they be treated as "reimbursement or other expense allowance arrangements" for the purposes of 26 U.S.C. § 62(a)(2)(A).

First, the IRS code clearly provides that an individual cannot deduct reimbursed business expenses from gross income under 26 U.S.C. § 62(a)(2)(A), if the employer's reimbursement plan provides "the employee the right to retain any amount in excess of the substantiated expenses covered under the arrangement," because in such a case the plan is not treated as "a reimbursement or other expense allowance arrangement." 26 U.S.C. § 62(c); 26 C.F.R. § 1.62–2(b). Under *every* NBA reimbursement plan, the NBA referees specifically had the right under their collective bargaining agreement to retain the difference between reimbursement payments

---

**9.** One of these three criteria is that the arrangement *require any excess reimbursement to be returned* to the employer within a reasonable time. 26 C.F.R. § 1.62–2(f) (emphasis added).

**10.** The government admits that the NBA reimbursement plans up to this point are nonaccountable plans. Pl.'s Subm. of Add'l Info. at 5–6.

for airline tickets and the actual amount of travel expenses incurred. Accordingly, since the NBA allowed all of the referees to retain money in excess of substantiated expenses, the NBA reimbursement plans are not "reimbursement or other expense allowance arrangement[s]," and business expenses paid or incurred by the referees under the NBA reimbursement plans cannot be deducted from the referee's gross income. 26 U.S.C. § 62; 26 C.F.R. § 1.62–2.

Second, the amounts paid under the NBA reimbursement plans must *all* be treated as paid under a nonaccountable plan, rather than an accountable plan, because the NBA reimbursement plans do not satisfy two of the three criteria for a "reimbursement or other expense allowance arrangement" set · forth in the IRS regulations.[11] 26 C.F.R. § 1.62(c)(1) & (3)(i). With regard to the first criteria, a business connection, the regulations provide that an arrangement does not satisfy this requirement and that "all amounts paid under the arrangement are treated as paid under a nonaccountable plan," if the employer arranges to pay an amount to the employee for business expenses regardless of whether the employee incurs, or is reasonably expected to incur, those business expenses. *Id.* § 1.62–2(d)(3)(i). Since the NBA was required to reimburse the referees for first class airline travel regardless of whether they actually flew first class, the NBA arrangements do not meet the business connection criteria, and all amounts paid under those plans must

be treated as paid under a nonaccountable plan. *Id.*

Moreover, since the NBA arrangements did not require the referees to return the difference in price between the first class or full price coach tickets and lower cost tickets actually used, the NBA plans also fail to satisfy the third criteria for a "reimbursement or other expense allowance arrangement," as they did not require the employees to return to the employer within a reasonable amount of time any amounts paid in excess of substantiated expenses. *Id.* § 1.62–2(f)(1). Clearly, under the applicable IRS code and regulations, all reimbursement amounts at issue in this case must be treated as paid under a nonaccountable plan because each NBA arrangement "does not satisfy one or more of the (three) requirements" listed in the IRS regulations, id. § 1.62–2(c)(3)(i), and the NBA arrangements are not "reimbursement or other expense allowance arrangements." *See United States v. Mathis*, No. CR–1–97–15, at 13–14, 1997 WL 683648 (S.D. Ohio June 2, 1997) (in this factually similar case, the court found the NBA reimbursement plans nonaccountable, where another NBA referee was charged with violating § 7212(a) and § 7206(1)).[12]

### 2. Motion to strike allegations in Count I denied

Although the NBA reimbursement plans are all nonaccountable plans, this does not mean all allegations concerning defendant's procurement or submission of bogus airline

**11.** These three criteria must be met for any amount to be treated as paid under an accountable plan. 26 C.F.R. § 1.62–2(c)(i).

**12.** In its response to defendant's supplemental motion and in its Submission of Additional Information, the government cites several regulations which it claims allow the NBA to make part of its arrangement an accountable plan, and another part nonaccountable. For example, the government claims the language "A payor may have more than one arrangement with respect to a particular employee, depending on the facts and circumstances," 26 C.F.R. § 1.62–2(c)(1), means it can have both plans in this case. However, the language in this and the other regulations cited by the government is inapplicable, because none of the NBA reimbursement plans meet all three regulatory criteria set forth in § 1.62–2(c): § 1.62–2(d) (business connection), § 1.62–2(e) (substantiation), and § 1.62–2(f) (requirement

that amounts in excess of expenses be returned). Notwithstanding the fact that an employer "may have more than one arrangement with respect to a particular employee," the plans used by the NBA were not accountable for *any* of the referees, as the government admits in the Indictment that the collective bargaining agreement required the NBA to permit all of the referees to keep the difference between reimbursed travel expense and the referees' actual travel expense. Although the government suggests that the "special rules for failure to return excess" set forth in § 1.62–2(c)(ii) and 3(ii) apply to this case, since defendant did not return his excess reimbursement to the NBA, Pl.'s Resp. Supp. Mo. at 5–6, those special rules are only applicable if the NBA reimbursement plans initially met the three criteria set forth in § 1.62–2(c), which is not the case here.

travel ticket stubs, receipts, and invoices to the NBA, and the purported issuance of false W–2 forms by the NBA, should be stricken from the Indictment. *But see Mathis,* No. CR–1–97–15, at 15–16 (Since the defendant "could not have induced the NBA to under report his income on the W–2 forms because the NBA was required to report all reimbursement payments in any event," the court held that defendant's "alleged inducement of the NBA to file incorrect W–2 forms are nonessential allegations as a matter of law, and shall be stricken as surplusage.").

Notwithstanding the fact that the NBA was required under the IRS code and regulations to report all reimbursement payments as income on the defendant's W–2 forms, as it was operating under a nonaccountable plan, the NBA still required the referees to submit airline ticket stubs, receipts, and invoices to account for their actual travel expenses, and it apparently relied on these submissions in preparing the referees' W–2 forms.[13] Although defendant's "failure to comply with NBA policy cannot be construed as criminal conduct," *id.* at 15, corruptly *endeavoring* to obstruct or impede the due administration of the IRS code and regulations *is* criminal conduct punishable under § 7212(a). Successful obstruction or impediment is not required, as § 7212(a) clearly prohibits the conduct of one who "obstructs or impedes, *or endeavors to obstruct or impede ...* " the administration of the tax laws. *See United States v. Bostian,* 59 F.3d 474, 479 (4th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 929, 133 L.Ed.2d 857 (1996) (holding that the defendant's conduct in filing a lis pendens, and *attempting* to interfere with the sale of property by affixing that document to a sign advertising an auction, in order to prevent the sale of property to satisfy an income tax deficiency, was "conduct ... within the proscription of section 7212(a)").

█ The court cannot think of any other reason for defendant to procure bogus airline ticket stubs, receipts, and invoices and sub-

mit them to the NBA other than an intent to cause the NBA to under report his income and over report his travel expenses on his W–2 form, so that defendant could pay less taxes than he truly owed to the IRS. *See United States v. Toliver,* 972 F.Supp. 1030 (W.D.Va.1997) (in this factually similar case, the court found "[i]t is evident that Toliver's submission of false receipts [to the NBA] was intended to conceal the income and secure an unlawful benefit"). Such conduct clearly constitutes a corrupt endeavor to obstruct or impede the due administration of the tax laws. *See infra* Part II.B; *Toliver,* 972 F.Supp. at 1034 ("The defendant's alleged actions, encompassing the procurement of false receipts, the submission of those receipts to the NBA and the ultimate filing of false returns, constitutes the type of scheme to which section 7212(a) applies."). *But see Mathis,* No. CR–1–97–15, at 16 (defendant's "alleged inducement of the NBA to file incorrect W–2 forms are nonessential allegations as a matter of law"). Accordingly, the court DENIES defendant's motion to strike from the Indictment those allegations concerning defendant's procurement and submission of bogus airline receipts and invoices, and the NBA's issuance of false W–2 forms.

## B. Defendant's motion to dismiss Count I

Defendant also moves to dismiss Count I based on a number of different theories. First, defendant contends that Count I fails to state a violation of the omnibus clause of 26 U.S.C. § 7212(a) because none of the alleged acts constitute a corrupt endeavor to obstruct *pending* administration of the tax code. Second, defendant argues that Count I is contrary to the legislative history and prior Department of Justice ("DOJ") interpretation of § 7212(a). Third, according to defendant, Count I exceeds prior applications of § 7212(a). The court will address each argument in turn.

---

**13.** At the hearing, the government explained that the NBA's legal advisors thought some of the NBA's reimbursement plans were accountable, and that the difference between the reimbursed travel expense and the actual travel expense was the only taxable expense. This may explain why the NBA required the referees to submit their airline ticket stubs, receipts, and invoices.

### 1. Pending IRS action not required.

Citing *United States v. Kassouf*, 948 F.Supp. 36, 38 (N.D.Ohio 1996),[14] defendant claims that the omnibus clause of § 7212(a) is limited to conduct which endeavors to obstruct or impede a *pending* audit or investigation known to the defendant. In defendant's case, the indictment does not allege that there was an IRS audit or investigation during the period at issue, nor does it allege that defendant made any purported false statements or presented any false documents to the IRS other than the allegedly false tax returns. Thus, defendant contends that the allegations in Count I are insufficient to support a charge under § 7212(a) because they do not constitute corrupt endeavors to obstruct or impede any pending administration of the tax code. The court disagrees. Several appellate courts, including the Fourth Circuit, have affirmed convictions under § 7212 for conduct that did not involve a pending IRS audit or investigation. *See. e.g. United States v. Hanson*, 2 F.3d 942 (9th Cir.1993); *United States v. Mitchell*, 985 F.2d 1275 (4th Cir.1993); *United States v. Popkin*, 943 F.2d 1535 (11th Cir.1991), *cert. denied*, 503 U.S. 1004, 112 S.Ct. 1760, 118 L.Ed.2d 423 (1992). Although these courts did not directly address the issue of whether a pending IRS action is required, it is clear that § 7212 does not contain such a requirement.

In the Fourth Circuit case *Mitchell*, 985 F.2d 1275, the defendant was charged with obstructing and impeding the administration of the tax laws by

filing a fraudulent application for tax-exempt status, misrepresenting the purpose of his organization [ (scientific research) ] to get tax exempt status, using the corporation as a vehicle to solicit "contributions," using those funds to secure hunting permits and arrange hunting trips, and causing or inducing the big game hunters to file false and fraudulent tax returns.

*Id.* at 1279. On appeal, the Fourth Circuit rejected defendant's argument that a violation of § 7212(a) requires corrupt or illegal means, such as bribery, solicitation, or subornation, rather than just a corrupt state of mind. Following the lead of the Eleventh and Eighth Circuits, which favored a broad construction of the omnibus clause of § 7212(a), the court held that § 7212(a) encompassed the misrepresentations and fraud-

**14.** In *Kassouf*, the defendant was charged with corruptly endeavoring to obstruct or impede the due administration of the internal revenue laws by making personal use of partnership assets, using partnership and corporate bank accounts to conceal income, and impeding and obstructing the IRS' ability to audit and determine the tax consequences of transactions. The district court drew an analogy between § 7212(a) and 18 U.S.C. § 1503, which makes it a crime to endeavor to obstruct or impede "the due administration of justice." The court noted that statutes such as § 1503 "prohibiting conduct which obstructs or impedes 'the due administration of justice' have long been construed to require the existence of a judicial proceeding of which the defendant had notice, as a precondition to the commission of the offense." *Id.* at 37. Just as this limitation in § 1503 required a "nexus" between the defendant's conduct and the judicial proceeding, *id.* (citing *United States v. Aguilar*, 515 U.S. 593, 598–600, 115 S.Ct. 2357, 2362, 132 L.Ed.2d 520 (1995)), the court found that § 7212(a) also requires a "nexus" or relationship between the defendant's conduct and "the due administration of [title 16]." *Id.* at 38. Thus, the court held that "the broad prohibition against endeavoring to obstruct or impede 'the due administration of [Title 26]' should be limited to conduct which has the natural and probable effect of obstructing or impeding a pending

government action under the Internal Revenue Code, [such as a subpoena, audit, or criminal tax investigation,] of which the defendant has notice." *Id.* Since defendant's alleged conduct occurred before he filed his tax returns, the court found the relationship between his conduct and "the due administration of [title 26]" was "severely attenuated," and the effect of his alleged activities on the administration of the tax laws was "speculative." Thus, the court held that § 7212(a) did not prohibit his conduct and dismissed the count containing the § 7212(a) charge. *Id.* This case is currently on appeal to the Sixth Circuit. *See United States v. Kassouf*, No. 96–4381 (6th Cir. Dec. 19, 1996).

This court disagrees with the district court in *Kassouf* that § 1503 is analogous to § 7212(a). While most Americans do not have judicial proceedings pending against them at any given moment, each year, we are required to file federal income tax returns and forms, and pay any taxes due to the IRS. Since the filing of income tax returns and forms and the collection of taxes is part of the administration of the tax laws, and such activities can be obstructed or impeded, the court does not believe that § 7212(a) is limited to corrupt conduct which endeavors to obstruct or impede a pending IRS audit or investigation known to the defendant.

ulent conduct of this defendant. *Id.* at 1277–79 (citing *Popkin,* 943 F.2d 1535, and *United States v. Williams,* 644 F.2d 696, 700 (8th Cir.), *cert. denied,* 454 U.S. 841, 102 S.Ct. 150, 151, 70 L.Ed.2d 124 (1981) ("the broad language of § 7212(a)'s omnibus clause demands a correspondingly broad construction")). According to the Fourth Circuit, defendant's conduct was "just such a creative and multi-faceted scheme to evade taxes that the omnibus clause of § 7212(a) targets." *Id.* at 1279.

In *Hanson,* 2 F.3d 942, the Ninth Circuit upheld a conviction under § 7212(a)'s omnibus clause of a taxpayer who submitted false 1096 and 1099 forms to the IRS showing fictitious payments to Farms Home Administration (FHA) officials, and filed a false 1040 form claiming a tax refund that was not due. The court first noted that a § 7212(a) conviction requires proof of (1) corruption, force, or threat of force, and (2) an attempt to obstruct the administration of the IRS. *Id.* at 946. Defendant's attempt to secure an unlawful benefit for himself, by falsely claiming a refund, satisfied the corruption requirement of § 7212(a). Since defendant admitted that his intent in filing the false 1099 and 1096 forms was to spark an IRS investigation of the FHA officials named in the forms, there was also proof that defendant satisfied the second requirement of § 7212(a), as he attempted to impede the IRS's (1) collection of his taxes, (2) collection of the taxes of another, or (3) auditing of his or another's tax records. *Id.* at 947 (citing *United States v. Kuball,* 976 F.2d 529, 531 (9th Cir.1992), and *United States v. Reeves,* 752 F.2d 995, 998 (5th Cir.), *cert. denied,* 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985)).

In *Popkin,* 943 F.2d 1535, the Eleventh Circuit affirmed the § 7212(a) conviction of an attorney who created a corporation to enable his client to disguise the character of income earned on drug deals, and avoid reporting income in the taxable year it was earned. The court explained that the word "corruptly" was used in § 7212(a) to

> prohibit all activities that seek to thwart the efforts of government officers and employees in executing the laws enacted by Congress. In a system of taxation such as

ours which relies principally upon self-reporting, it is necessary to have in place a comprehensive statute in order to prevent taxpayers and their helpers from gaining unlawful benefits by employing that 'variety of corrupt methods' that is 'limited only by the imagination of the criminally inclined.'

*Id.* at 1540 (quoting *United States v. Martin,* 747 F.2d 1404, 1409 (11th Cir.1984), *reh'g denied* 756 F.2d 885 (11th Cir.1985)). The court concluded that " § 7212(a) is such a statute and that the use of 'in any other way corruptly' in the second clause gives clear notice of the breadth of activities that are proscribed." *Id.*

In light of other appellate courts' broad construction of the phrase "in any other way corruptly" in § 7212(a), this court finds that a pending IRS audit or investigation is not required for § 7212(a) to apply. As in *Mitchell,* the misrepresentations and fraudulent conduct of defendant is "just such a creative and multi-faceted scheme to evade taxes that the omnibus clause of § 7212(a) targets." *Id.* at 1279. The Indictment does not simply allege that defendant filed tax returns containing false information. It also alleges that defendant engaged in a scheme over several years to avoid paying the correct amount of taxes. Defendant allegedly "down graded" his first class and full price coach tickets for lower cost tickets and pocketed the difference without reporting this taxable income to the IRS or the NBA. He caused his travel agency to issue numerous bogus airline ticket stubs, receipts, and invoices. Defendant submitted these documents to the NBA to mislead the NBA into believing that defendant was using first class and full price coach tickets when he was in fact using lower cost tickets and pocketing the difference. Surely defendant was aware the NBA would use the information he submitted to calculate his income, his business expenses, and the amount of money to withhold for taxes. The court can think of no other reason for defendant to submit false travel receipts and invoices to the NBA other than a corrupt intent to cause the NBA to under report his income to the IRS and withhold insufficient taxes. Such conduct is

clearly intended to obstruct or impede the due administration of the internal revenue laws, and therefore the allegations in Count I are clearly sufficient to support a charge under § 7212(a).

### 2. Legislative history and prior DOJ interpretation

Defendant maintains that the legislative history of § 7212(a), H.R.Rep. No. 1337, 83rd Cong., 2d. Sess. (1954); S.Rep. No. 1622, 83rd Cong., 2d Sess. (1954), and a 1989 DOJ policy statement concerning § 7212(a), Department of Justice, Tax Division, Directive No. 77, Section 7212(a) Policy Statement (dated July 7, 1989), both support a narrow reading of the omnibus clause, and therefore it should not apply to his alleged conduct. See Def.'s Mo. Dismiss at 4–7. According to defendant, the legislative history demonstrates that the statute was enacted to address acts or threats of physical force against IRS employees, and acts and attempts to engage in corrupt solicitation of IRS employees through, for example, bribery or extortion. Id. at 5.

■ The Fourth Circuit, however, noted in Mitchell, 985 F.2d 1275, that the language in the statute encourages "a broad rather than narrow construction." Id. at 1279 (citing Martin, 747 F.2d at 1409 ("the legislative history does not purport to limit the broad language of [the statute]") and H.R.Rep. No. 1337, 83rd Cong., 2d. Sess. (1954); S.Rep. No. 1622, 83rd Cong., 2d Sess. (1954)). The argument "that the legislative history of § 7212 clearly limits the scope of the statute to corrupt solicitation or subornation is unpersuasive" to the Fourth Circuit; the court failed to "find the history particularly enlightening or dispositive as to Congress's understanding of the precise scope of the omnibus provision." Id. (citing Williams, 644 F.2d at 699 n. 13 (the scant legislative history is unhelpful because it does not speak to the omnibus clause)). In addition, the court agrees with the government that, regardless of the content of the 1989 DOJ provision cited by defendant, the DOJ's internal guidelines create no substantive rights for defendant. See United States v. Caceres, 440 U.S. 741, 753–55, 99 S.Ct. 1465, 1472–73, 59

L.Ed.2d 733 (1979); see also Crandon v. United States, 494 U.S. 152, 177, 110 S.Ct. 997, 1011, 108 L.Ed.2d 132 (1990) (Scalia, J., concurring) (finding that because criminal statutes are "not administered by any agency but by the courts" the "interpretation of those charged with prosecuting criminal statutes is not entitled to deference"). The government notes that this prosecution under § 7212(a) was authorized by the DOJ. Pl.'s Resp. Mo. Dismiss at 10 n. 1. Accordingly, the legislative history and previous DOJ interpretations of § 7212(a) do not prevent the court from applying that statute to defendant's conduct. See Toliver, 972 F.Supp. at 1035 n. 12 (defendant's reliance on the legislative history of § 7212(a), and his citation of the Justice Department policy statement, do not impact the court's analysis nor its conclusion that the statute applies to defendant's conduct).

### 3. Count I charges do not exceed prior § 7212 application

Defendant first cites the Fifth Circuit's opinion in Reeves, 752 F.2d 995, in support of his argument that the charges in Count I far exceed prior application of § 7212(a). That court held that § 7212(a) "is directed at efforts to bring about a particular advantage such as impending collection of one's taxes, the taxes of another, or the auditing of one's or another's tax records." Id. at 998. Defendant then lists four distinct categories of conduct which he claims are prohibited under § 7212(a) under the case law of appellate courts: "[ (1) ] cases in which the defendant took action directly targeted at impeding or harassing an IRS employee; [ (2) ] cases in which the defendant engaged in fraudulent activity in connection with an on-going audit, collection or investigation proceeding by the IRS; [ (3) ] cases in which the defendant set in motion an administrative action by the IRS with the intent to harass or to gain an advantage over some third party; and [ (4) ] cases in which the defendant set up a massive scheme with the intent and purpose of disrupting IRS administrative activities." Def.'s Mo. Dismiss at 8 (footnotes containing the cases are omitted). Defendant then

claims his conduct does not fall within any of his four categories.

Nothing in § 7212(a), however, states that an individual's conduct must fit under one of defendant's four categories for the statute to apply. Moreover, defendant's alleged conduct is comparable to the conduct of the defendants in the two § 7212(a) cases cited by defendant as examples of his fourth "massive scheme" category, *Mitchell,* 985 F.2d 1275, and *Popkin,* 943 F.2d 1535. Furthermore, his conduct is comparable to the conduct of the defendant charged with a § 7212(a) violation in *Hanson,* 2 F.3d 942, and *Williams,* 644 F.2d at 700 (holding that a defendant who aided and abetted the preparation and filing of false W–4 forms violated § 7212(a)).

Like the defendants in *Mitchell, Popkin, Hanson,* and *Williams, see supra* Part II. B.1, defendant allegedly corruptly endeavored to obstruct or impede the collection of taxes by the IRS. Not only did defendant allegedly file false IRS tax forms to reduce his amount of taxes owed to the IRS, but he also furthered his scheme by procuring bogus airline ticket stubs, receipts, and invoices from a travel agency, and submitting this false information to the NBA which represented that his travel expense was higher and his reportable income was lower. Clearly, defendant's conduct is covered by § 7212(a), as he endeavored to have the NBA over report his travel expenses and under report his income in defendant's W–2 forms. *See Toliver,* 972 F.Supp. at 1035; *see also Bostian,* 59 F.3d at 479 (defendant's conduct in attempting to interfere with the IRS' sale of his property to satisfy an income tax deficiency was "conduct … within the proscription of section 7212(a)"); *Mitchell,* 985 F.2d at 1278 ("misrepresentation and fraud … are paradigm examples of activities done with an intent to gain an improper benefit or advantage" in violation of § 7212(a)); *Williams,* 644 F.2d at 699–701 (holding that conduct which assisted "the preparation and filing of false W–4 forms constitutes an endeavor to impede or obstruct the due administration of the Internal Revenue Code").

In conclusion, the government may bring an action against defendant under § 7212(a) for the conduct alleged in Count I of the Indictment. Accordingly, defendant's motion to dismiss is DENIED.

## C. Defendant's motion to compel government to elect

Defendant also moves the court to compel the government to elect the charge under which it will proceed at trial. Defendant maintains that Count I "of the indictment is duplicitous in that it charges two or more distinct and separate offenses." Def.'s Mo. Elect at 1. According to defendant, Count I can be grouped into six separate allegations of unlawful conduct resulting in a false tax return for each year of the years 1989–1993 and a false amended tax return for 1991. *Id.* at 2. He also contends that "Counts 2–6 charge the filing of false tax returns and amended returns which are identical tax returns charged in count One, (with the exception of the 1989 tax return)." *Id.* at 2–3. Defendant therefore requests that the court order the government "to elect which offense of obstruction alleged in Count One they choose to prosecute." *Id.* at 3.

Duplicity is the "joining of two or more offenses in a single count." *United States v. Marshall,* 75 F.3d 1097, 1111 (7th Cir.1996). A defendant may be prejudiced by duplicity because it could result in "improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and … the danger that a conviction will result from a less than unanimous verdict as to each separate offense." *United States v. Duncan,* 850 F.2d 1104, 1108 n. 8 (6th Cir. 1988). Under the federal rules, however, the government may allege in a single count that an offense was committed by "one or more specified means." Fed.R.Crim.P. 7(c). A single count containing allegations of multiple acts is not duplicitous as long as the alleged offenses constitute a continuing course of conduct. *See United States v. Berardi,* 675 F.2d 894, 898 (7th Cir.1982) (the joining of two or more separate offenses in a single count is not duplicitous if the acts are

part of a continuing course of conduct),; *United States v. Shorter*, 608 F.Supp. 871, 875 (D.D.C.1985), *aff'd*, 809 F.2d 54 (D.C.Cir.), *cert. denied*, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987), *abrogated on other grounds by Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 ("an indictment is not impermissibly duplicitous even though it alleges more than one offense in a single count if the offenses being charged bear such a relationship to one another that they constitute a continuing course of conduct"; upholding indictment charging tax evasion for twelve separate years as a single count of tax evasion in violation of § 7201) (citing several cases from other circuits in support).

The Fourth Circuit has noted that § 7212(a) is a broad statute which targets creative and multifaceted schemes to evade taxes. *See Mitchell*, 985 F.2d at 1279. While some of the charged acts in Count I may constitute independent criminal offenses, such as violations of § 7206(1), they are also corrupt acts that could impair or obstruct the administration of the tax laws. Section 7212(a) is analogous to the general conspiracy statute, 18 U.S.C. § 371, in that both statutes cover a broad range of unlawful conduct. Just as a conspiracy may involve violations of numerous and different laws, a violation of § 7212(a) may also involve violations of several different laws.

■ Defendant's procurement and submission of bogus airline ticket stubs, receipts, and invoices to the NBA, and his filing of several false tax returns each year is clearly a continuing course of related conduct. All of defendant's conduct was aimed at achieving the same objective, which was to conceal his actual income and travel expenses, and obstruct or impede the administration of the tax laws, specifically the collection of his taxes. Since the facts and offenses alleged in Count I constitute a continuing course of conduct in violation of § 7212(a), Count I is not duplicitous. *See Toliver*, 972 F.Supp. at 1039 (in factually similar case, reaching conclusion that Count I was not duplicitous); *see also United States v. Mohney*, 949 F.2d 899, 905 (6th Cir.1991) (where indictment charged

§ 371 conspiracy to impair and impede the lawful functions of the Department of the Treasury, and "the conspiracy implicated a variety of statutes," the court held the indictment was legitimate and explained "[w]here the conduct charged violates several statutes, the most complete description of the objective may be a conspiracy to defraud a particular agency of the government"); *United States v. Kabbaby*, 672 F.2d 857, 860 (11th Cir.1982) ("it is common and proper to allege overt acts as substantive violations and then join them with conspiracy charges"); *United States v. Giampa*, 904 F.Supp. 235, 271 (D.N.J.1995) (language will not be stricken where, while not essential to the charge, it is in a general sense relevant to the overall scheme alleged in the indictment); *cf. United States v. Robinson*, 651 F.2d 1188, 1195 (6th Cir.), *cert. denied*, 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981) (where indictment particularized in one count different acts that were part of a single scheme, the indictment was not duplicitous).

At the hearing, defendant also urged the court to follow *Mathis*, in which the court dismissed a § 7212(a) charge under Count I of a similar indictment based on multiplicity. After striking from Count I allegations that defendant induced the NBA to file false W–2 forms, the only allegations that remained in Count I were defendant's filing of false tax returns. Since such unlawful conduct was directly covered by § 7206(1), and defendant was charged under this statute in the remaining counts, Counts II through V, the court dismissed Count I. The district court held that a § 7212(a) violation cannot be founded on the filing of false tax returns, when such conduct forms the basis of other counts in the indictment.

In this case, defendant wants the court to follow the reasoning of *Mathis* and either dismiss Count I, or force the government to elect between Count I and Counts II through VI. Unlike the court in *Mathis*, however, the court has not stricken from the Indictment the allegations about defendant's alleged inducement of the NBA to file false W–2 forms. Thus, the reasoning in *Mathis* is inapplicable here.

In *United States v. Swanson*, No. 96–4213, 1997 WL 225446, at *3 (4th Cir. May 5, 1997) (unpublished per curiam opinion), the Fourth Circuit recently explained that multiplicity, which is the charging of a single offense in several counts of an indictment, is considered a problem because it could result in multiple punishments for the same offense. *Id.* (citing *United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir.), *cert. denied*, 508 U.S. 967, 113 S.Ct. 2949, 124 L.Ed.2d 696 (1993)). Absent clearly contrary legislative intent, " 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' " *United States v. Allen*, 13 F.3d 105, 108 (4th Cir.1993) (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)) (cited in *Swanson*, 1997 WL 225446, at *3).

Using this test set forth in *Allen*, the Fourth Circuit in *Swanson* noted:

> The elements of a § 7206(1) violation are: "(1) the defendant made and subscribed [which includes filing] to a tax return containing a written declaration; (2) the tax return was made under penalties of perjury; (3) the defendant did not believe the return to be true and correct as to every material matter; and (4) the defendant acted willfully." In contrast, the elements of a § 7212(a) violation are that the defendant: (1) corruptly, (2) endeavored, (3) to obstruct or impede the administration of the Internal Revenue Code. Obviously, each of these offenses requires proof of facts that the other does not.

*Id.* (citations omitted). Accordingly, the Fourth Circuit found that the defendant's conviction under § 7212(a) was not multiplicitous with his conviction under § 7206(1).

In *Toliver*, 972 F.Supp. at 1037, a factually similar case, the court also found that the elements of a violation under § 7206(1) differ from the elements of one under § 7212(a). Citing *Swanson*, the court explained that the *Blockburger* test was satisfied with regard to these two statutes. The court noted that § 7206(1) requires proof that the defendant acted "willfully"—that the defendant voluntarily and intentionally violated a known legal duty. Under § 7212(a), on the other hand, the government must prove the defendant acted "corruptly"—the act must have been done by the defendant with " 'an intent to give some advantage inconsistent with the official duty and rights of others ...' " *Id.* 972 F.Supp. at 1037 (citing *Mitchell*, 985 F.2d at 1278) (citations and quotations omitted). Since the government would have to prove different facts to establish the elements in these two statutes, the court found that the count containing the § 7212(a) charge was not multiplicitous with the two counts containing the § 7206(1) charges.

In this case, the court agrees with the courts in *Swanson* and *Toliver* that a charge under § 7212(a) in Count I is not multiplicitous with the charges under § 7206(1) in Counts II through VI. Defendant's procurement and submission of false airline ticket stubs, receipts, and invoices, in concert with his preparation and filing of false returns, makes Count I a factually different charge than Counts II through VI. Accordingly, the court does not find Count I duplicitous, or multiplicitous with Counts II through VI. The court DENIES defendant's motion to compel the government to elect.

### III. Conclusion

For the reasons stated above, the court DENIES defendant's Motion and Supplemental Motion to Dismiss Count One, and DENIES his Motion to Compel the Government to Elect.[15]

---

15. On July 7, 1997, the government submitted a Fourth Circuit case, *United States v. Wilson*, 118 F.3d 228 (4th Cir.1997), which dealt with the statute of limitations issue for a 26 U.S.C. § 7212(a) charge. Although the government said this issue was raised by defendant in his motion that is pending before this court, this defense was not raised by the defendant at the hearing held on June 12, 1997. Regardless, it is clear that the government is not barred from prosecuting defendant under the § 7212(a) charge in the Indictment. In *Wilson*, the Fourth Circuit explained that the six-year limitations period for a violation of § 7212(a) "begins to run on the date of the last corrupt act." *Id.* at 236. The government filed the Indictment against defendant on Febru-

The Clerk is DIRECTED to send a copy of this Opinion to counsel for the parties.

It is so ORDERED.

ary 12, 1997. Since the government has alleged that defendant committed several affirmative acts in furtherance of his scheme in violation of § 7212(a) on or after February 12, 1991, the government clearly began its prosecution well within the statute of limitations period. *Id.* at 236–37.