**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                    No. 97-4116

JAMES CALVIN SEGERS,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.
                                                                       No. 97-4131

VINCENT GERARD MCCOLLOUGH, a/k/a
Robert Miller,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
William L. Osteen, Sr., District Judge.
(CR-96-72)

Submitted: July 7, 1998

Decided: July 20, 1998

Before ERVIN and MOTZ, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Thomas N. Cochran, Assistant Federal Public Defender, Greensboro, North Carolina; Daniel Smith Johnson, Winston-Salem, North Carolina, for Appellants. Walter C. Holton, Jr., United States Attorney, Michael F. Joseph, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Vincent G. McCollough and James C. Segers appeal from their convictions for conspiracy to possess with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 846 (1994) and attempt to possess with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 841 (1994). On appeal, they claim that: (1) the evidence was insufficient to support their convictions for conspiracy to possess with intent to distribute because the Government did not prove an agreement between them; (2) the evidence was insufficient to support their convictions for attempt to possess with intent to distribute because the Government did not prove knowledge; (3) the district court engaged in a pattern of prejudicial conduct; (4) the cumulative effect of the district court's evidentiary rulings precluded Segers from presenting his defense; and (5) Segers was deprived of his right to a speedy trial. For the following reasons, we affirm.

On direct appeal of a criminal conviction, a "verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). The evidence showed that a United States Customs Inspector in San Juan, Puerto Rico, was inspecting packages that originated in the United States Virgin Islands and detected a package con-

2

taining cocaine hydrochloride that was addressed to"Robert Miller, 112 N. Jackson Ave., Winston-Salem, N.C." The Postal Inspector in Charlotte, North Carolina, Robert Lazarus, was notified of the interception of the package. Lazarus received the package and met with several law enforcement agents. One of the agents obtained an anticipatory search warrant for the residence of 112 North Jackson Avenue. The agents decided to remove the cocaine, make a controlled delivery, and then execute the search warrant. Lazarus obtained a postal truck and dressed as a postal worker to make the delivery. When Lazarus attempted to deliver the package to 112 North Jackson Avenue, he was met by a woman at the front door. Lazarus stated that he "had a package for Robert Miller." The woman indicated that a "Robert Miller" did not live at that address.

Lazarus returned to the postal truck and began to leave the area when he realized that Segers was attempting to stop the truck. Segers asked if Lazarus had a package and Lazarus responded in the affirmative. When Lazarus informed Segers that the package was addressed to "Robert Miller" and Miller did not live at the residence, Segers told Lazarus to wait while Segers went to the residence. Segers went to the front porch and met with McCollough. Lazarus then walked to the front door and asked McCollough if he was "Robert Miller." McCollough said "yeah." Lazarus instructed McCollough to sign his name on the delivery receipt and McCollough signed the name "Robert Miller." McCollough also printed that name right below the handwriting. Lazarus gave McCollough the package and watched McCollough carry the package into the residence. Lazarus then drove the mail truck around the block, donned a bullet proof vest, and returned to the residence to execute the search warrant. As Lazarus and the other officers returned to the residence, they saw Segers leaving.

When the officers entered the residence, McCollough was not in the house. Approximately one to two minutes after the package was delivered, other officers observed McCollough exit the rear of the house carrying a black bag with the package inside and walk towards a gas station. McCollough was stopped and arrested.

McCollough admitted to an agent from the Drug Enforcement Administration that he was "supposed to be paid $250 to take a package to the Wilco [station], to meet a guy from South Carolina, and [he

was] supposed to give the package to him." McCollough made a similar admission to a United States Customs agent. McCollough stated that "he had planned to deliver the package to a man named William, who he had recently met from South Carolina." He further stated that he was to deliver the package, which he thought contained jewelry, to a man at a nearby BP gasoline station. When asked why somebody would pay him to receive jewelry, McCollough replied that he knew he was doing something illegal.

When questioned by officers, Segers stated that the kilogram of cocaine belonged to a black male from the Virgin Islands named "Robbie." Segers stated that he met Robbie two to three weeks earlier. He said that Robbie had asked him to cook up some powder cocaine into crack cocaine. Segers further stated that on this occasion Robbie asked him if he knew a location where they could mail some cocaine from the Virgin Islands. Segers said that he introduced McCollough to Robbie and an agreement was made that the cocaine was going to be mailed to 112 North Jackson Avenue. In a subsequent interview, Segers stated that McCollough was to receive either $1000, or an ounce of cocaine, for receiving the package of cocaine. Segers was going to make the payment. Segers stated that McCollough was to take the package to one of the service stations and "meet up with Robbie after the delivery." Segers knew that Robbie had mailed other packages to the Winston-Salem area.

McCollough testified that he lived with a woman at 112 North Jackson. He also rented rooms to other individuals. Segers introduced him to a man named "E" or "William." William informed McCollough that he wanted to rent a room but he did not have money. So, William asked McCollough to receive some jewelry in the mail in exchange for money. McCollough later testified that he realized that William and Robbie were the same person when he saw the name "Robert" on the package that was delivered to his residence.

On appeal, Appellants contend that the evidence was insufficient to support their convictions. Appellants first contend that there was insufficient evidence to support their conviction for conspiring to possess with the intent to distribute cocaine because the Government did not prove the existence of an agreement between them. A conspiracy to possess cocaine with intent to distribute is established when: "(1)

4

an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." United States v. Burgos , 94 F.3d 849, 857-58 (4th Cir. 1996), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868). Because a conspiracy is "clandestine and covert" in nature, a conspiracy is generally proved by "circumstantial evidence and the context in which the circumstantial evidence is adduced." Id. Circumstantial evidence tending to prove a conspiracy may consist of a defendant's "relationship with other members of the conspiracy, the length of this association, his attitude, conduct, and the nature of the conspiracy." United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984). Further, a variety of conduct, apart from selling drugs, can constitute participation in a conspiracy sufficient to support a conviction. See Burgos, 94 F.3d at 859. The focus of appellate review of the sufficiency of evidence to support a conspiracy conviction is on the complete picture, viewed in context and in the light most favorable to the Government, that all of the evidence portrayed. See id. at 863.

The testimony from the law enforcement agents and Appellants themselves was sufficient to support Appellants' conspiracy convictions. Segers admitted to officers that he introduced Robbie to McCollough so that Robbie could ship cocaine to McCollough's residence. Segers stopped the postal truck from leaving McCollough's residence so that the package could be delivered. McCollough stated that he agreed to receive a package and received the package by signing a false name. Although the evidence included uncorroborated testimony and contradictory testimony, it is well established that the jury, not the appellate court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe. See id. at 862. Likewise, determinations of credibility are within the sole province of the jury and are not susceptible to judicial review. See id. at 863.

Appellants also contend that there was insufficient evidence to support their conviction for attempting to possess cocaine with the intent to distribute because the Government did not prove that they knew the delivered package contained cocaine. The offense of possession with

5

intent to distribute requires the Government to prove that the defendant knowingly possessed a controlled substance with the intent to distribute it. See 21 U.S.C. § 841(a) (1994); United States v. Samad, 754 F.2d 1091, 1096 (4th Cir. 1984). To prove an attempt the Government must establish culpable intent to commit the crime charged and a substantial step towards the completion of the crime that strongly corroborates that intent. See United States v. Neal, 78 F.3d 901, 906 (4th Cir. 1996), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3260 (U.S. Oct. 7, 1996) (No. 95-9410). To prove intent in this case, the Government had to show that the Appellants knew that the delivered package contained cocaine. See Samad, 754 F.2d at 1096. Segers admitted to officers that he knew of the plan to send cocaine to McCollough's residence. Also, McCollough signed the name of "Robert Miller," lied in stating that a "Robert Miller" lived at his residence, and immediately left his residence after he received the package. Furthermore, "[t]he same evidence establishing a defendant's participation in a conspiracy may support a conclusion that a defendant participated in the principal's unlawful intent to possess and distribute drugs." Burgos, 94 F.3d at 873. Therefore, we find that sufficient evidence supports the Appellants' convictions.

Appellants next claim that the district court engaged in a pattern of prejudicial conduct which conveyed an impression of partiality towards and advocacy of the Government's case which deprived the Appellants of a fair trial. We review the district court's conduct under an abuse of discretion standard to determine whether the Appellants were deprived of a fair trial. See United States v. Castner, 50 F.3d 1267, 1272 (4th Cir. 1995). The district court has the duty to conduct a jury trial "in a general atmosphere of impartiality." United States v. Cassiagnol, 420 F.2d 868, 878 (4th Cir. 1970). Also, a district court must not create the sense of partiality by continually intervening on the side of one of the parties or undermine the functioning of counsel through repeated interruption of the examination of witnesses. See Castner, 50 F.3d at 1272.

Appellants contend, for example, that the district court created an appearance of partiality by failing to make sua sponte objections against the Government, question Government witnesses, or admonish the prosecution team. However, Appellants do not specify the reasons why the court should have taken these actions. The Appellants further contend that the court, on its own initiative, inquired whether

6

the Government wanted limiting instructions regarding questions posed concerning the search warrant testified about at trial. The search warrant affidavit indicated the wrong date for the search. With the Government's approval, the court instructed the jury that the validity of the search warrant was not at issue, so they need not be concerned about the validity or invalidity of the search warrant. The court further instructed that the inconsistency between the date in the affidavit and the officer's testimony could be considered with regard to the witness's credibility. We find no error in the district court's inquiry and subsequent instruction because the district court has a duty to ensure "`that the facts are properly developed and that their bearing upon the question at issue are clearly understood by the jury.'" United States v. Seeright, 978 F.2d 842, 847 (4th Cir. 1992) (quoting Simon v. United States, 123 F.2d 80, 83 (4th Cir. 1941)). The Appellants also complain that the court interceded during an officer's testimony to emphasize his testimony that Segers initially denied his presence at 112 North Jackson Avenue during the time of the controlled delivery. The Appellants further contend that it was improper for the court to require the repetition of testimony establishing Segers's presence in McCollough's residence after the controlled delivery. The record reveals that the court questioned the officer about his interrogation of Segers so that his testimony would be more clear. Likewise, because McCollough's testimony was confusing and difficult to follow, the court asked him questions to clarify his testimony regarding Segers's presence at his residence on the day of the controlled delivery. The court questioned witnesses on several occasions when the elicited testimony was confusing. The court had a duty to "`exercise reasonable control over' the interrogation of witnesses and the presentation of evidence in order to ensure the effective determination of the truth [and] to avoid needless waste of time in the presentation of a case." Castner, 50 F.3d at 1272 (quoting Fed. R. Evid. 611(a)). Also, a district court may directly interrogate witnesses under Fed. R. Evid. 614(b). We find no abuse of discretion in the district court's actions.

Segers next argues that the cumulative effect of the district court's evidentiary rulings precluded him from presenting his defense and deprived him of a fair trial. A district court has broad discretion in ruling on the relevance and admissibility of evidence and the reviewing court will not disturb those rulings absent an abuse of discretion. See

7

United States v. Bostian, 59 F.3d 474, 480 (4th Cir. 1995). Segers complains of several evidentiary rulings which he contends had the net effect of preventing him from educating the jury about his defense. Segers's defense was that he was attempting to help Antonio Bryant, his "adopted nephew," who had become involved in some legal problems. Segers claims that he was acting under the belief that he could get Bryant a bond reduction or possibly stave off Bryant's indictment by "set[ting] Robbie up." The record reveals that Segers was allowed to present his defense theory. Segers testified about calling law enforcement both before and after the controlled delivery, although he was not allowed to testify about the content of some of those conversations. The district court excluded testimony that tended to imply that Segers was acting with law enforcement to facilitate the controlled delivery because Segers had previously testified that he did not know that a package containing cocaine was going to be delivered on the date of the controlled delivery and he did not have anything to do with the delivery of it. The court also excluded evidence of what unidentified officers allegedly told him prior to the delivery because it was hearsay evidence. Therefore, we do not find that the district court abused its discretion in making its evidentiary rulings.

Lastly, Segers claims that he was denied a speedy trial. Because Segers never addressed this issue in the district court, we review only for plain error. See Castner, 50 F.3d at 1277. A defendant shall be tried within seventy days from the filing date of the indictment or from the date he has appeared before a judicial officer, whichever date occurs last. See 18 U.S.C. § 3161(c)(1) (1994). Excluded from this time is a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run." 18 U.S.C. § 3161(h)(7) (1994). Also excluded are time periods for medical treatment of any defendant. See 18 U.S.C. § 3161(h)(i)(A) (1994). Because Segers was tried within seventy days of arraignment for his second superseding indictment, there was no error.

Accordingly, we affirm Appellants' convictions. We deny Segers's motion to file a supplemental appendix and a pro se supplemental brief. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED